PEOPLE v NOEL

Docket No. 57967. Submitted July 1, 1982, at Grand Rapids.—Decided February 24, 1983. Leave to appeal applied for.

Markley N. Noel was convicted of breaking and entering an occupied dwelling with intent to commit a larceny following a jury trial in Barry Circuit Court, Hudson E. Deming, J. Defendant was observed by police officers entering a house and later observed leaving the house carrying a carpet. The house was being observed by police as part of an arson investigation because, while the owner of the dwelling was in a nursing home for heart trouble, two fires had occurred on the premises. Because of the fires, most of the household goods and furnishings had been removed for safekeeping. The owner indicated his intent to return to his home when he was in better health. Defendant testified that he thought the house was abandoned, went inside to see what the house was like and took the carpet on the spur of the moment when he saw it, thinking that nobody wanted the carpet. Defendant appeals. *Held:*

1. The fact that the owner was not occupying the house on the date of defendant's breaking and entering of the premises does not control the question of whether the premises was an occupied dwelling within the meaning of the breaking and entering statute. A premises is considered to be a dwelling house if it is habitually used as a place of abode and will continue to be so considered even if the occupant is absent if such occupant has the intent to return following the absence.

2. There was adequate evidence of some circumstances to support the jury's determination that defendant had the intent to commit the larceny at the time of the breaking and entering.

3. The instructions to the jury, when read as a whole,

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Burglary § 4.

Occupant's absence from residential structure as affecting nature of offense as burglary or breaking and entering. 20 ALR4th 349.

[2, 3] 13 Am Jur 2d, Burglary § 52.

[4] 75 Am Jur 2d, Trial § 925.

[5] 75 Am Jur 2d, Trial §§ 876, 877.

[6] 75 Am Jur 2d, Trial §§ 31, 623, 624.

adequately conveyed to the jury that the necessary specific intent must be found to have existed at the time the' breaking and entering occurred.

4. The trial court properly refused to instruct the jury as to a lesser included misdemeanor which carried a sentence of less than one year.

Affirmed.

R. M. MAHER, J., dissented. He would hold that the jury instructions relative to intent were misleading and mandate reversal. He would reverse.

### OPINION OF THE COURT

1. CRIMINAL LAW — BREAKING AND ENTERING — OCCUPIED DWELLING.

A residence need not in fact be occupied in order for the offense of breaking and entering of an occupied dwelling to take place; any dwelling house habitually used as a place of abode, whether or not an occupant is physically present at the time of the breaking and entering, is an occupied dwelling within the meaning of the breaking and entering statute; it is the intent to return following an absence which controls the question of whether the dwelling is an occupied dwelling (MCL 750.110; MSA 28.305).

2. CRIMINAL LAW — BREAKING AND ENTERING — INTENT.

A conviction for breaking and entering with intent to commit a larceny requires proof that the defendant had the intent to commit a larceny at the time of the breaking and entering (MCL 750.110; MSA 28.305).

3. CRIMINAL LAW — BREAKING AND ENTERING — INTENT — PRESUMPTIONS — EVIDENCE.

A presumption of an intent to steal does not arise solely from proof of a breaking and entering; rather, there must be evidence of some circumstance reasonably leading to the conclusion that a larceny was intended (MCL 750.110; MSA 28.305).

4. CRIMINAL LAW — JURY INSTRUCTIONS.

Reversal because of alleged improper jury instructions is not mandated where the instructions, when read as a whole, accurately state the law, are not ambiguous and do not mislead the jury.

5. CRIMINAL LAW — LESSER INCLUDED OFFENSES — MISDEMEANORS — PUBLIC POLICY.

The cause of justice is not well served by charging a serious crime

and convicting of a much lower offense; therefore, as a matter of policy, in any case wherein the charged offense is punishable by incarceration for more than two years, the court, whether or not requested, may not instruct the jury on lesser included offenses for which the maximum allowable period of incarceration is one year or less.

DISSENT BY R. M. MAHER, J.

6. CRIMINAL LAW — JURY INSTRUCTIONS.

   A criminal defendant's right to a fair trial entails the principle that a jury may not be instructed in a manner which is either erroneous or misleading.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Judy A. H. Hughes,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*Marovich & Stroba* (by *Richard D. Stroba),* for defendant on appeal.

Before: M. J. KELLY, P.J., and R. M. MAHER and R. L. TAHVONEN,* JJ.

PER CURIAM. Following trial by jury, defendant was convicted of breaking and entering an occupied dwelling with the intent to commit a larceny, MCL 750.110; MSA 28.305. Defendant was found not guilty of malicious destruction of police property, MCL 750.377b; MSA 28.609(2). Defendant was sentenced to a two-year probation period, with the first 60 days to be served in jail. He appeals as of right.

At trial, Michigan State Police Detective Sergeant Larry Squires testified that at approximately 2:45 a.m. on the morning of September 28, 1980, he and two other officers were watching a house located at 5943 Hickory Road in Hickory

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Corners, Michigan. The surveillance was part of an arson investigation to which defendant was not connected. Squires observed a pickup truck pull into the driveway and stop in front of the house. Two men carrying flashlights exited from the truck and walked around the house until they were eventually out of Squires' line of vision. Squires soon saw lights inside the house. He told one of the other officers that he would confront the men when they returned to their truck. When the men came out of the house, defendant was carrying a carpet.

As the men approached the truck, Squires stepped out and announced "state police". Both men attempted to get in their truck. Squires was able to detain the other man, but the defendant backed the truck out of the driveway, hitting a police car which had been positioned behind the truck, and drove across the yard out onto Hickory Road. Squires later inspected the house and discovered an open door on the southeast corner. That door was closed when Squires inspected the premises earlier that evening.

Michigan State Police Officer Donald Betts testified that he was with Squires in the early morning hours of September 28, 1980. He essentially confirmed the testimony of Squires. Betts testified further, however, that he fired three shots at defendant's truck as defendant drove away after colliding with Betts' car, which had been positioned behind the truck.

Michigan State Police Officer Joseph Bouchard testified that he was the third officer present on September 28, 1980, and had been positioned to view the road in front of the house. Bouchard observed what he believed to be defendant's pickup truck pass by the house an hour or two

before it pulled into the driveway. After being informed over a walkie-talkie that two men had entered the house and were on their way out, Bouchard pulled his police car in front of defendant's truck and pointed his gun at defendant, yelling "state police". When defendant drove across the yard, Bouchard fired a couple of shots at defendant's tires. Bouchard attempted to follow defendant down Hickory Road but eventually lost sight of the truck.

Mr. Ralph Backus testified that he owned the dwelling located at 5943 Hickory Road and had resided there until September 17, 1980, when he temporarily went into a nursing home because of heart trouble. While in the nursing home, Mr. Backus' barn caught on fire and, a few days after that, part of his house caught on fire. Backus intended to return to his home when he was in better health.

Three other witnesses testified that sometime after the fires, but before September 28, 1980, they removed most of Mr. Backus' household goods and furnishings to protect them against any further fires.

The trial court denied defendant's motion for a directed verdict after the prosecution rested its case. Defendant then testified that on the evening of September 27, 1980, he had been out drinking rather heavily, celebrating with a friend who had just asked him to be his best man in his wedding ceremony. As they were driving down a road, defendant decided on the spur of the moment to go inside the Backus house and "see what it was like". Defendant liked old houses and believed that the Backus residence had always been abandoned. The two men entered the house and, upon returning to the truck, defendant heard someone yell. He

looked to his left and saw a gun pointed at him within six inches of his window. Although the defendant heard the word "police", the man pointing the gun was not dressed in uniform and defendant believed that he was just a citizen. Defendant began to drive his truck forward out of the driveway, when he was confronted with another car entering the driveway in front of him. Defendant then backed up, not realizing that another car had been positioned behind him, collided with that vehicle, and drove across the yard out onto Hickory Road. Defendant testified that he did not intend to steal the rug when he entered the Backus house, but did so after seeing it lying crumpled up on the floor, believing that no one had any use for it.

Mr. Bernard LeBlond and Mr. Phillip Wunderlin each testified that defendant had a reputation in the community for honesty and integrity.

On appeal, defendant argues first that the Backus house was not an "occupied dwelling" within the meaning of MCL 750.110; MSA 28.305. Defendant cites to evidence that the house had been vacated nearly two weeks before his entry, that the home had suffered fire damage, and that neighbors had removed most of the household goods and furnishings and to his testimony at trial that he felt the house was "always abandoned and unused".

MCL 750.110; MSA 28.305 provides that an occupied dwelling does not require the physical presence of an occupant at the time of the breaking and entering as long as the dwelling is "habitually used as a place of abode". Mr. Backus, the owner of the dwelling, testified he intended to return to his home when he was in better health.

"When an inhabitant intends to remain in a dwelling

as his residence, and has left it for a temporary purpose, such absence does not change the dwelling into an unoccupied one in the eyes of the law. The intent to return following an absence controls; the duration of the absence is not material. Nor is the structure's habitability germane." *People v Traylor,* 100 Mich App 248, 252; 298 NW2d 719 (1980).

Backus' testimony was sufficient evidence that the house was an "occupied dwelling".

Defendant argues next that he did not have the specific intent to commit a larceny when he entered the Backus house. To be convicted of breaking and entering an occupied dwelling with the intent to commit a larceny, defendant must have had the intent to commit a larceny at the time of the breaking and entering. See *People v Tilliard,* 98 Mich App 17, 18-19; 296 NW2d 180 (1980). A presumption of an intent to steal does not arise solely from proof of a breaking and entering. *People v Palmer,* 42 Mich App 549, 552; 202 NW2d 536 (1972). Rather, there must be evidence of some circumstance reasonably leading to the conclusion that a larceny was intended. *Palmer, supra,* p 552.

In the instant case, there are circumstances beyond the breaking and entering from which a rational trier of fact could infer that defendant had the intent to commit a larceny at the time of his breaking and entering. Defendant entered the dwelling at 2:45 a.m. He and his companion carried flashlights. They did in fact commit a larceny. Upon approach by the police, defendant rammed a police car and made his escape. These facts justify the jury's finding that beyond a reasonable doubt defendant had the intent to commit a larceny at the time of his breaking and entering.

Defendant alleges error next in the trial court's instructions to the jury on the issue of intent. In

its initial instructions, the court informed the jury that "at the time of the breaking and entering the dwelling, the defendant must have intended to commit the crime of larceny therein". After the jury began deliberations, it asked the court to redefine "intent". The court orally defined intent and stated further that the burden rested upon the people "to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent". Subsequently, the jury asked for a written definition of intent. The trial court gave the jury a written definition of the concept, adding that defendant could not be convicted of any of the charged offenses unless "the defendant at the time of doing the alleged act had that wrongful intent". Defense counsel did not object to the substance of the trial court's oral or written instructions on intent. On appeal, defendant argues that the instructions were so erroneous as to require reversal, since the instructions did not make it clear when the specific intent had to be formed.

Several factors lead us to find that the trial court's instructions did not result in error requiring reversal. The trial court did inform the jury in its original instructions that the defendant had to have had the necessary specific intent at the time of the breaking and entering. The jury did not request instructions on when the intent had to be formed but asked only for the definition of intent, which was accurately given. Further, the trial court's statement that defendant had to have had the necessary specific intent "at the time of doing the act" was not ambiguous. The court gave this instruction after listing the charged offense and the five lesser included offenses on which the jury could have returned a guilty verdict. The "time of

doing the alleged act" instruction clearly indicated that defendant needed to have had the necessary specific intent at the time he committed any one of the six offenses. No error requiring reversal occurred in this instruction.

Defendant's final argument is that the trial court erred in refusing to instruct the jury on the lesser included offense of entry without permission. The trial court did not err in refusing to instruct on entry without permission. Such an instruction is barred by *People v Chamblis,* 395 Mich 408, 429; 236 NW2d 473 (1975), wherein the Supreme Court held:

"In any case wherein the charged offense is punishable by incarceration for more than two years, the court, whether or not requested, may not instruct on lesser included offenses for which the maximum allowable incarceration period is one year or less."

Affirmed.

R. M. Maher, J. *(dissenting).* I dissent because I find that the trial court improperly instructed the jury on when the defendant must have possessed the intent to commit larceny. The trial court's instructions are set forth in the footnote.[1] The

---

[1] "There can be no crime of breaking and entering an occupied dwelling with the intent to commit the crime of larceny therein; attempted breaking and entering of an occupied dwelling with the intent to commit the crime of larceny therein; breaking and entering of an unoccupied dwelling with the intent to commit the crime of larceny therein; attempted breaking and entering an unoccupied dwelling with the intent to commit the crime of larceny therein; entry without breaking of a house with intent to commit the crime of larceny therein; attempted entry without breaking of a house with intent to commit the crime of larceny therein—under our law where there is no intent to commit the crime of larceny therein. And the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent."

dispute centers on the meaning to be assigned to the phrase "the alleged act". To be a proper instruction, this phrase must refer to the act of breaking and entering a dwelling.

The majority concludes that this phrase is not ambiguous if read in context. Because the phrase appears after the trial court listed six offenses, the majority concludes that the "time of doing the alleged act" means "at the time he committed any one of the six offenses". The jury may have so understood. If it did, however, the jury misapprehended the law. At what time does one "commit" an offense? I suppose it is the time that the last element of the offense is in place. Thus, the trial court informed the jury, according to the majority, that the intent to commit larceny must be the last element of the offense the defendant completed. But this still does not tell the jury when, *in relation to defendant's act of breaking and entering,* the defendant had to have the intent.

The trial court failed to properly instruct the jury on the element of intent. Instead, it misled the jury into thinking that the requisite intent only needed to be formed last. As such, the jury may have inferred that they could convict defendant if they found he formed the intent to commit larceny after the breaking and entering. A "defendant's right to a fair trial entails the principle that the jury may not be instructed in a manner either erroneous or misleading". *People v Maliskey,* 77 Mich App 444, 454; 258 NW2d 512 (1977). Accordingly, I would reverse.