## PEOPLE v LAKEMAN

Docket No. 71361. Submitted March 20, 1984, at Detroit.—Decided June 5, 1984.

Michael M. Lakeman was charged in Wayne Circuit Court with assault with intent to commit murder and felony-firearm. Following a bench trial, defendant was acquitted of assault with intent to commit murder, but was convicted of felonious assault and felony-firearm, John D. O'Hair, J. Defendant appeals, arguing that there was insufficient evidence to support his conviction for felonious assault in light of the strong evidence that he was very drunk at the time he committed the crimes. *Held:*

Although defendant was entitled to raise the defense of voluntary intoxication, the trial court's factual findings that defendant, even though in an advanced state of intoxication, was able to form the minimal intent to frighten people outside his apartment by discharging a gun through a closed door are not clearly erroneous. The evidence is sufficient to support defendant's conviction for felonious assault.

Affirmed.

1. ASSAULT AND BATTERY — BATTERY.

A battery in Michigan is a wilful act of touching another person; a reckless or criminally negligent act will not support a conviction of battery.

2. ASSAULT AND BATTERY — FELONIOUS ASSAULT — SPECIFIC INTENT — VOLUNTARY INTOXICATION.

An assault which requires an intent to put the victim in reasonable fear or apprehension of an immediate battery is a specific intent crime and is subject to the defense of voluntary intoxication.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 6 Am Jur 2d, Assault and Battery §§ 5, 6, 111.

[2] 6 Am Jur 2d, Assault and Battery §§ 20, 51, 208.

Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Robert C. Mueckenheim,* for defendant on appeal.

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and S. J. LATREILLE,* JJ.

PER CURIAM. Defendant was charged with assault with intent to commit murder, MCL 750.83; MSA 28.278, and felony-firearm, MCL 750.227b; MSA 28.424(2). After a bench trial, he was acquitted of assault with intent to commit murder but was convicted of felonious assault, MCL 750.82; MSA 28.277, and felony-firearm. Defendant's defense to the charges was voluntary intoxication. He appeals as of right, arguing that there was insufficient evidence to support his conviction for felonious assault in light of the strong evidence that he was very drunk at the time he committed the crimes.

At about 8 a.m. on December 30, 1982, defendant began to consume whiskey and beer. He continued to drink through the day and well into the night. As a conservative estimate, defendant had consumed a half gallon of whiskey and at least six or seven beers by 2:30 a.m., December 31, 1982. The trial court found, and the prosecution does not dispute, that defendant was in fact intoxicated as a result of this binge.

At 2:30 a.m. on December 31, 1982, defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

accosted two complete strangers, Gene Nickowski and Marcia Cosky, as they left a bar. He was belligerent and waved a knife at Mr. Nickowski. Nickowski assumed a defensive position and defendant immediately turned and ran away. It later turned out that he fled to his apartment above a nearby bar. Cosky described defendant as looking "like a very confused person with perhaps a lot of problems, like somebody that was on drugs would look like" and as if "he wasn't all together at the time of the incident". Nickowski had not been able to observe defendant closely but felt his behavior was irrational.

The police were called and followed defendant to his apartment. They heard the sounds of a barricade being put up in front of the apartment door. The police indentified themselves, but defendant apparently believed they were really Nickowski and Cosky. He refused to come out and, after a time, a gun shot came from inside the apartment, passed through the door and narrowly missed two police officers standing outside the apartment. Defendant then proceeded to knock out the windows of the apartment with the butt of the gun and apparently cut himself on the glass. After some more time, defendant's girlfriend (who was barricaded inside the apartment with their daughter) threw out the gun. The police entered the apartment and found defendant lying in a dazed condition in a pool of blood from his cut wrist. One of the officers smelled a strong alcoholic smell from "all over defendant". Immediately after his arrest, defendant passed out.

Defendant was treated at a nearby hospital. Two and one-half hours after the incident, his blood alcohol level was 328.5 milligrams per deciliter. According to the emergency room nurse who

treated defendant, anything over 150 milligrams per deciliter would be considered "intoxicated", while anyone at defendant's level would be "highly intoxicated" and "almost at the level of unconsciousness". An alcoholic would be better able to tolerate this level of alcohol ingestion, but still would be unlikely to know the exact nature of everything he was doing.

Defendant's history included the fact that he had been involuntarily committed to a hospital in March, 1982, because of his dangerous behavior when intoxicated. Neighbors who had seen defendant drunk in the past stated that, when drunk, defendant behaved as if he were "half out of his head" or as if he were "in a trance". Those who had seen him on December 30 through December 31, 1982, agreed that he had followed this pattern.

Defendant testified that the gunshot had occurred by accident when he was striking the gun against the door in a belligerent rage. He could not recall the knife incident or going to the hospital. He denied having had any intent to kill the police officers at the door.

The trial court found that defendant had lacked the specific intent to kill the police officers. However, the court found that when defendant fired the shotgun (the court here implicitly rejected defendant's claim that the gun went off by accident) he "had the capacity and did in fact, have the intent to cause apprehension to whoever was on the other side of that door". This finding was based on the fact that defendant "wisely elected not to engage in a fight with [Nickowski]" after Nickowski assumed a defensive posture, retreated to his home, and, when home, "did those acts necessary to protect himself to the best of his ability in his home". The court found that defen-

dant had "fired a shotgun to scare or to discourage those at the door" and found defendant guilty of felonious assault and felony-firearm.

In response to defendant's claim of voluntary intoxication, the prosecution argues that such intoxication is not a defense to felonious assault because felonious assault is not a specific intent crime. The prosecution also argues that, even if felonious assault is a specific intent crime, it may be committed as the result of criminally negligent behavior and that voluntary intoxication would not affect any intent element under those circumstances. The prosecution's argument is premised on a chain of reasoning which notes that every battery includes an assault and that some batteries may be commited as the result of criminally negligent (reckless) behavior (see LaFave & Scott, Criminal Law, § 81, p 605). Therefore, the prosecution argues, some assaults might be committed as the result of criminally negligent (reckless) behavior.

We note, however, that Michigan requires that an individual commit a wilful act of touching another person before that individual can be convicted of a battery. *People v Rivera,* 120 Mich App 50, 55; 327 NW2d 386 (1982); *People v Bryant,* 80 Mich App 428, 433; 264 NW2d 13 (1978), *lv den* 402 Mich 942 (1978); *Tinkler v Richter,* 295 Mich 396, 401; 295 NW 201 (1940). Thus, under Michigan law, it would be improper to convict of an assault which rested on proof of a battery committed as the result of criminally negligent behavior. In addition, even if this were not the law, this argument would not apply in this particular case. The trial court did not conclude that defendant had committed an assault based upon a completed battery, but rather found that defendant had in-

tended to put the people on the other side of his door in apprehension of an immediate battery. We believe that an assault which requires an intent to put the victim in reasonable fear or apprehension of an immediate battery is a specific intent crime and is subject to the defense of voluntary intoxication. *People v Polk,* 123 Mich App 737, 740-741; 333 NW2d 499 (1983).

However, although we find that defendant was entitled to raise the defense of voluntary intoxication, we do not find that the trial court's factual findings are clearly erroneous.[1] The trial court recognized defendant's state of extreme intoxication and concluded that he had not had the specific intent to kill the police officers on the other side of the apartment door. However, the trial court found that, even in this condition, defendant had been able to form the minimal intent to frighten the people outside the door. While this is a close question, given the undisputed evidence of defendant's advanced intoxication and previous behavior when drunk, we conclude that this finding is not clearly erroneous. The evidence demonstrated that defendant was capable enough to retreat from a perceived threat to the safety of his own apartment and, once there, to take precautions against intrusion by others into the apartment. Firing a gun so as to frighten off the perceived intruders fit logically into this pattern of behavior. We therefore affirm.

---

[1] Defendant has framed the issue as insufficiency of the evidence. However, because this was a bench trial, the issue is more properly whether or not the trial court's fact-finding was clearly erroneous. GCR 1963, 517.1.