## PEOPLE v STRONG

Docket No. 72106. Submitted January 8, 1985, at Lansing.—Decided June 4, 1985.

L. C. Strong was convicted of felonious assault following a jury trial in Washtenaw Circuit Court, Patrick J. Conlin, J. The prosecution proofs were to the effect that defendant picked up the complainant, a teenage girl, near a donut shop late at night, took her to a deserted area, put a knife to the girl's throat and then cut the girl's arm as she made her escape from complainant's automobile. Defendant's theory of the case was that, while he had picked up the girl and had taken her around in search of marijuana which the girl had requested, he had returned her to the donut shop unharmed. The court instructed the jury that to convict of felonious assault they must find that defendant did a forceful or violent act with a dangerous weapon, intending to put the victim in reasonable fear or apprehension of an immediate battery. Defense counsel specifically waived a further instruction on specific intent. Defendant appealed. *Held:*

1. While the trial court failed to instruct the jury on both of the bases which would establish the necessary specific intent, *i.e.,* that the assault was committed with a dangerous weapon with either the intent to injure the victim or with the intent to place the victim in reasonable fear or apprehension of an

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 6 Am Jur 2d, Assault and Battery § 13 *et seq.*

[2] 28 Am Jur 2d, Estoppel and Waiver § 150.

[3] 21A Am Jur 2d, Criminal Law § 967 *et seq.*
  Adequacy of defense counsel's representation of criminal client regarding appellate and postconviction remedies. 15 ALR4th 582.

[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
  Failure to object to improper questions or comments as to defendant's pretrial silence or failure to testify as constituting waiver of right to complain of error—modern cases. 32 ALR4th 774.

[5] 5 Am Jur 2d, Appeal and Error §§ 850-852.

[6] 21 Am Jur 2d, Criminal Law §§ 130, 131.
  Modern status of rules as to burden and sufficiency of proof of mental irresponsibility in criminal case. 17 ALR3d 146.

[7] 75 Am Jur 2d, Trial § 573 *et seq.*

immediate battery, the failure to give the intent to injure instruction did not result in error mandating reversal, since the failure to give the instruction did not prejudice defendant. Further, defense counsel specifically waived any additional instruction on specific intent.

2. The defendant was not deprived of effective assistance of counsel.

3. The verdict of the jury cannot be said to be against the great weight of the evidence.

4. The jury could properly infer from the proofs at trial that defendant had the necessary specific intent.

5. The proofs at trial did not establish that defendant was so intoxicated that he could not have the requisite specific intent, and the evidence was sufficient to establish that defendant, despite any intoxication, formed the necessary intent.

Affirmed.

W. J. GIOVAN, J., concurred. He would further hold that, even if the former specific intent instruction contained in the Criminal Jury Instructions had been requested, it should not have been given because that instruction was argumentative.

OPINION OF THE COURT

1. ASSAULT AND BATTERY — FELONIOUS ASSAULT — JURY INSTRUCTIONS — INTENT.

It is not error mandating reversal for a trial court to instruct the jury in a trial for felonious assault as to only one and not both of the two alternative means by which the jury may find the requisite specific intent necessary to convict one of felonious assault; the failure to instruct as to both alternative means of establishing the requisite specific intent does not prejudice the defendant and, indeed, may be favorable to him.

2. CRIMINAL LAW — JURY INSTRUCTIONS — WAIVER.

It is not error for a trial court to fail to charge a jury in a trial for felonious assault as to specific intent in the language found in the Criminal Jury Instructions where the court otherwise instructs the jury as to the requisite specific intent and defense counsel specifically waives the giving of a jury charge in the language found in the Criminal Jury Instructions.

3. CRIMINAL LAW — TRIAL TACTICS — APPEAL — ASSISTANCE OF COUNSEL.

A difference of opinion as to trial tactics does not amount to ineffective assistance of counsel, and the Court of Appeals is reluctant to substitute its judgment for that of a trial counsel in matters of trial strategy.

4. Appeal — Verdicts — New Trial — Preserving Question.

A defendant's claim that the verdict was against the great weight of the evidence is properly preserved for appeal where the defendant moved for a new trial on that ground in the trial court.

5. Appeal — Criminal Law — Evidence.

The question of whether a conviction is against the great weight of the evidence generally involves issues of the credibility of witnesses or circumstantial evidence; the Court of Appeals, in reviewing this issue on appeal, looks to whether there was an abuse of discretion by the trial court in denying a motion for a new trial rather than resolving credibility issues anew.

6. Criminal Law — Specific Intent — Inferences.

The specific intent to commit a crime, being a mental state of mind, may be shown by proof of facts and circumstances from which the jury may draw the inference that the defendant had the necessary specific intent.

Concurrence by W. J. Giovan, J.

7. Trial — Jury Instructions — Argumentative Jury Instructions.

*Jury instructions which are argumentative should not be given.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* First Assistant Prosecuting Attorney, for the people.

*Dale J. Crowe,* for defendant on appeal.

Before: Allen, P.J., and J. H. Gillis and W. J. Giovan,* JJ.

Per Curiam. On September 29, 1982, defendant was convicted by jury of felonious assault. Sentenced on November 18, 1982, to prison for a term of from one and one-half to four years, defendant appeals by leave granted. Four issues are raised. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

At about 1:00 a.m. on May 3, 1982, Annetta
Grima, then 17 years of age, was proceeding on
foot in Ypsilanti to find a pay phone to call her
father in Romulus for a ride. Two city policemen
saw her walking and took her to a Dunkin Donuts
restaurant to use the phone there. After learning
that her father couldn't pick her up, she again
started walking. Defendant pulled out of the Dun-
kin Donuts parking lot, honked and offered to take
her to a friend's house where they could get direc-
tions to Romulus. After a short visit at the friend's
house, defendant poured some whiskey in a cup
and returned to the car where defendant drank
the whiskey and threw the cup into the back seat.
Defendant then drove to a deserted factory area
near some railroad tracks and turned off the car
lights.

When Grima reached for the car's passenger
door, defendant leaned over and brought a five-to-
six-inch hook knife to Grima's throat. When
Grima again reached to open the car door, defen-
dant came back with the knife cutting Grima's
upper arm. Grima managed to open the door,
swing her knees out and escape. As she ran down
the railroad tracks her arm began bleeding badly.
Upon reaching the street, she stopped two women
who were driving by, who took her to the Ypsilanti
hospital. She was transferred to University Hospi-
tal in Ann Arbor where she had 47 external and
12 to 15 internal stitches.

The day after her release from the hospital,
Grima was taken by detectives to an impound lot
where she was unable to identify defendant's car
but did identify a cup found in the back seat. She
also noted that the car's radio was tuned to the
station which she had previously told the detec-
tives was playing that night in the automobile in
which she had been assaulted. She did not see

blood on the car seat. Sometime later, she identified someone other than the defendant in a photo lineup as her assailant.

Defendant testified that sometime after midnight on May 3, 1982, Grima came up to his car at Dunkin Donuts and asked for a ride to Detroit. He replied that he did not have enough gas to go to Detroit, but the girl got in the car anyway and asked where she could get marijuana. Defendant took her to the house of a friend, who said he had no marijuana. Defendant then drove around looking for friends who might have marijuana and, after finding none, took Grima back to Dunkin Donuts because he had to get back to Ann Arbor. When he got to Ann Arbor, he was arrested for drunk driving after he ran a red light.

I

In his first issue on appeal defendant argues that the trial judge erred by failing to instruct the jury that the crime of felonious assault requires specific intent. In his charge to the jury, the trial court did not use the words "specific intent". Instead the court instructed:

"In this case the Defendant is charged with what we refer to as felonious assault. Any person who shall assault another with a knife without intending to commit the crime of murder, without intending to do great bodily harm less than murder, is guilty of this charge. Defendant has pled not guilty and to establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt. First, that the Defendant did a forceful or violent act *intending to put the victim in reasonable fear or apprehension of an immediate battery.* Second, that the act was such as would cause a reasonable person to be fearful of injury and did so frighten another person. Lastly, that the

Defendant committed such an assault by the use of a dangerous weapon. That is as alleged in this case, a knife." (Emphasis supplied.)

No objection was raised to this instruction. While the jury was instructed on specific intent, the trial judge did not give CJI 3:1:16, and no objection was raised. In fact, in discussing the appropriate instructions prior to the charge, defense counsel specifically agreed to the instructions as given,

"*The Court:* Do you want specific intent? You have requested it? Are you waiving that now?
"*Mr. West:* Yes, I would waive the specific intent. I think the Court covers that."

Defendant now contends that the court's instruction was inadequate. According to defendant, intent to put the victim in fear of possible harm or injury is not enough, there must be the specific intent to actually harm or injure the victim and the jury must be explicitly so instructed. We disagree on the basis of *People v Yarborough,* 131 Mich App 579; 345 NW2d 650 (1983). In that case, as in the instant case, the trial court instructed the jury on only one prong of the *Joeseype Johnson* [1] instruction. There, the court informed the jury that they must find that the defendant intended to injure his victim in order to be convicted of felonious assault; the court did not instruct that the hearsay intent could also be found where the defendant intended to put the victim in reasonable fear or apprehension of an immediate battery. The situation was the reverse of the present case, where the judge gave only the "menac-

---

[1] *People v Joeseype Johnson,* 407 Mich 196; 284 NW2d 718 (1979).

ing" prong of the *Joeseype Johnson* instruction.[2] In
*Yarborough,* this Court stated that failure to in-
struct on both forms of intent was not error:

"The instruction given here did not prejudice the
defendant. The judge told the jury that they must find
an intent to injure, but ignored the possibility that the
jury might find an intent to put the victim in reason-
able fear or apprehension of an immediate battery. The
instruction given favored the defendant rather than
prejudicing him. The instruction properly informed the
jury of the elements of the offense which it would have
to find proven beyond a reasonable doubt to convict the
defendant." 131 Mich App 581.

In our opinion the same result should prevail in
the instant case. We see no reason to instruct on
both prongs of intent where, as here, the victim is
actually harmed and the jury is informed that
they must find the defendant intended to put the
victim in reasonable fear of immediate injury.

Finally, on this issue we note that defense coun-
sel affirmatively waived an instruction on specific
intent. In such circumstances, the court did not
err in failing to give such an instruction. See
*People v Johnson,* 409 Mich 552, 562; 297 NW2d
115 (1980). This Court examined a similar with-
drawal of a requested jury instruction in *People v
Jankowski,* 130 Mich App 143; 342 NW2d 911
(1983). In that case, defendant asserted that the
trial court erred in failing to instruct on a lesser
included offense. Defense counsel initially made a
written request for such an instruction but later
abandoned the request. This Court stated: "Since

[2] CJI 17:4:01 is consistent with the holding in *Joeseype Johnson.*
CJI 17:4:01 states that there are two ways of committing an assault:
(1) by trying to physically injure another person, in which event the
defendant must intend to injure; (2) by frightening another person, in
which event the defendant must do a violent act, intending to put the
victim in reasonable fear or apprehension of injury.

defendant ultimately abandoned his request for an instruction * * * the trial court did not err in failing to give such an instruction." *Jankowski, supra,* p 151.

## II

We are not persuaded that effective assistance of counsel was denied because counsel did not pursue the defense of intoxication and failed to request an instruction on specific intent. The defense in this case was misidentification. To establish this defense, it was important to defendant's theory of the case that he knew what he was doing and where he had been the night of May 2, 1982, and the early morning hours of May 3, 1982. This knowledge allowed defense counsel at trial to bring in the testimony of defendant that he had dropped the victim off at Dunkin Donuts unharmed. The defense of voluntary intoxication would have been inconsistent with the defense that defendant knew what he was doing all that night and clearly remembered that he returned the victim to Dunkin Donuts unharmed. This Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy. *People v Avery,* 114 Mich App 159, 168; 318 NW2d 685 (1982), *lv den* 417 Mich 861 (1983). A court cannot conclude that merely because a trial strategy backfires, effective assistance of counsel is denied. *People v Currelley,* 99 Mich App 561, 568; 297 NW2d 924 (1980), *lv den* 411 Mich 904 (1981).

Defendant also contends that his counsel's failure to request a jury instruction on specific intent rendered his counsel ineffective. For the reasons set forth in issue I, *supra,* we disagree. Under *Yarborough, supra,* the instruction given by the court was adequate. Further, based upon the tran-

script, it is apparent that defense counsel was well aware of the rules governing instructions on specific intent and in all respects performed well above the required standard of a lawyer with ordinary training and skill in the criminal law. *People v Garcia*, 398 Mich 250; 247 NW2d 547 (1976).

## III

Defendant contends that there were so many factual inconsistencies adduced at trial that, as a matter of law, the verdict of the jury was contrary to the great weight of the evidence. An objection going to the weight of the evidence can be raised only by motion for a new trial. On appeal, this Court reviews a denial of such a motion for abuse of discretion. *People v Mattison*, 26 Mich App 453, 459-460; 182 NW2d 604 (1970); *People v Johnson*, 128 Mich App 618; 341 NW2d 160 (1983). The rationale behind this procedure was set forth in *People v McCumby,* 130 Mich App 710, 717; 344 NW2d 338 (1983):

"The question of whether a conviction is against the great weight of the evidence generally involves issues of credibility or circumstantial evidence. See *People v Scotts,* 80 Mich App 1, 9; 263 NW2d 272 (1977). In reviewing this issue on appeal, the Court looks to whether there was an abuse of discretion in denying the motion for a new trial rather than resolving credibility issues anew. See *People v Atkins,* 397 Mich 163, 172; 242 NW2d 292 (1976)."

Even if this issue were properly before this Court, a brief review of the testimony adduced at trial makes it clear that the jury's verdict was not against the great weight of the evidence. Defendant's theory that he spent some time going to

various friends' homes looking for marijuana and
then returned Grima to Dunkin Donuts and that
she must have been picked up and assaulted by
someone else is inconsistent with the time frame
testified to by the officers and with the hospital
report indicating that Grima was taken to the
hospital by 2:30 a.m.

Defendant claims that because there was no
blood on his car or on his clothing it is clear that
he could not have been Grima's assailant. How-
ever, Grima testified that the time between her
injury and her flight from the car was a matter of
seconds. Thus, it is not wholly improbable that she
would not have bled in the car. While Grima
identified another man in a photo lineup, the jury
heard the testimony of Detective Foley that the
quality of the photos was extremely poor and that
identifications by photo lineup are often inade-
quate.

Finally, the fact that Grima was unable to pick
out defendant's car at the impound lot was not so
significant as to go against the great weight of the
evidence, since she saw the car at night and under
artificial light. More importantly, Grima was
aware that the lock mechanism on the car was the
reverse of that normally found, she knew that
there would be a cup in the back seat, and she
knew to which station the radio in the car was
turned on the basis that defendant had been lis-
tening to that station on the evening of her as-
sault.

## IV

Lastly, defendant argues that the evidence of his
specific intent was insufficient to support his con-
viction for felonious assault. As we noted earlier,
to convict a defendant of felonious assault, the

prosecution must, among other elements, prove that the defendant either intended to injure the victim *or* intended to put the victim in reasonable apprehension of an immediate battery or injury. Because the law recognizes the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to sustain a conclusion that a defendant entertained the requisite intent. See *People v Palmer,* 42 Mich App 549, 552; 202 NW2d 536 (1972); *People v Noel,* 123 Mich App 478; 332 NW2d 578 (1983). Intent is a mental attitude made known by acts. *People v Haxer,* 144 Mich 575, 577; 108 NW 90 (1906); *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947). "Intent is a secret of the defendant's mind", which he can disclose by his declarations or by his actions and "his actions sometimes speak louder than words". *People v Quigley,* 217 Mich 213, 217-218; 185 NW 787 (1921); *People v Gill,* 8 Mich App 88, 93; 153 NW2d 678 (1967).

Intent may also be inferred from facts and circumstances established beyond a reasonable doubt. *People v Phillips,* 385 Mich 30, 37; 187 NW2d 211 (1971); *People v Kimball,* 60 Mich App 690, 695; 233 NW2d 26 (1975). The jury may draw the inference as to the intent with which a particular act was done as they draw all other inferences, from any fact in evidence which to their minds fully proves its existence. *People v Roberts,* 19 Mich 401, 418 (1870); *People v Turner,* 62 Mich App 467, 470; 233 NW2d 617 (1975), *lv den* 395 Mich 799 (1975).

The record contains more than sufficient evidence to persuade a rational trier of fact that the element of specific intent was proved beyond a reasonable doubt. Grima testified that defendant drove her to a deserted factory area, where he turned off his car's headlights and pulled a hook

knife on her. Defendant then placed the knife blade up to Grima's throat, which caused her to panic and plead that he not hurt her. Defendant told her to be quiet and to "feel how sharp the blade is". After a scuffle, defendant again placed the knife to Grima's throat. The only testimony offered by defendant was that he drove Grima around town and then dropped her off at Dunkin Donuts. This conflict in the testimony had to be resolved by the jury. A determination of credibility was properly within their purview and this Court should not disturb that determination.

Defendant contends that due to his intoxication he was unable to form the specific intent to put Grima in reasonable apprehension of an immediate battery, citing *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973).[3] The argument is flawed in two respects. First, under *Crittle,* the question is not whether defendant had the capacity to form the specific intent, but instead is whether defendant actually had the requisite intent. Second, sufficient evidence was presented that despite defendant's intoxication, he formed the minimal intent to frighten Grima. *People v Lakeman,* 135 Mich App 235, 240; 353 NW2d 493 (1984).

Affirmed.

W. J. Giovan, J. *(concurring).* I concur in the majority opinion, including that portion which holds that defendant waived the CJI 3:1:16 instruction labeled "Specific Intent". I write separately, however, to add my view that a complete disposition of the defendant's claim of error requires the further observation that, because it is argumentative, the defendant would not have been entitled to the instruction even if it had been requested.

[3] *Crittle* was overruled in June, 1984, by *People v Savoie,* 419 Mich 118; 349 NW2d 139 (1984).

At the time of trial in this case, CJI 3:1:16 provided:[1]

"(1) When a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist.

"(2) Intent is a decision of the mind to knowingly do an act with a conscious [fully formed] objective of accomplishing a certain [specific] result.

"(3) There can be no crime of _____ under our law where there is no intent to _____, and the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent.

"(4) The intent with which a person does an act is known by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used and all other facts and circumstances, but only if that intent is established by the evidence.

"[At this point read instructions relative to defenses which have been raised which would negate intent, i.e., intoxication, claim of right, etc.]

"(5) If you find that the defendant, for any reason whatsoever, did not consciously and knowingly act with the intent to _____, the crime cannot have been committed and you must find the defendant not guilty of the crime of _____.

"(6) If from all of the evidence you have a reasonable doubt as to whether or not the defendant knowingly and consciously acted with the intent to _____, then you must find the defendant not guilty of the crime of _____."

The first, third, fifth and sixth paragraphs are restatements in partisan form of instructions that the trial judge did give: that the described specific intent is an element of the crime charged and that a finding of guilt requires proof of each element

[1] A revised form of CJI 3:1:16 appears in the December, 1984, supplement to the Standard Criminal Jury Instructions.

beyond a reasonable doubt. Once these proposi-
tions are clearly established by jury instruction, to
go on to give CJI 3:1:16 is to imply that the issue
of specific intent has some special significance in
the case or that there is some infirmity of proof
regarding that element. If either proposition is to
be advanced, the argument should be made by
counsel rather than by the implication of instruc-
tions from the court.

While it hardly requires citation of authority to
say that jury instructions should not be argumen-
tative, it is relevant to observe that long ago
Justice COOLEY disparaged requests to charge
which were similar in effect to the specified para-
graphs of CJI 3:1:16:

"The defence is not entitled of right to put an argu-
ment into the instructions; that must be left to counsel.
Neither is he entitled of right to have from the judge
any comment upon the evidence, or any pointing out of
the weak points in the case of the State, so far as they
involve questions of fact and not of law. All that can be
demanded is, correct instructions on the legal points
and no incorrect or unfair comments upon or presenta-
tion of the evidence." *People v Crawford,* 48 Mich 498,
501; 12 NW 673 (1882).

In similar circumstances the Court has already
said that the failure to give CJI 3:1:16 is not a
failure to instruct on an element of an offense.
*People v Yarborough,* 131 Mich App 579; 345
NW2d 650 (1983).[2] I would make explicit that the
defendant would not have been entitled to the
instruction even if it had been requested because it
is argumentative.

---

[2] Although the appellant has not relied on *People v Beaudin,* 417
Mich 570, 571; 339 NW2d 461 (1983), it will be noted that the Court
reproduced CJI 3:1:16 in footnote 1. The Court did not approve or
disapprove the language of the instruction, the holding of the case
being that the offense of endangering the lives of persons traveling on
a railroad is a specific intent crime and that the trial court erred in
not instructing on the specific intent element.