# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. WHITFORD, Minor.

UNPUBLISHED
August 18, 2015

No. 325724
Bay Circuit Court
Family Division
LC No. 14-011675-NA

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court order terminating his parental rights to the minor child under MCL 712A.19b(3)(a)(*ii*) (parent deserted child for 91 or more days without seeking custody of child during that period), (3)(c)(*i*) (conditions of adjudication continue to exist), and (3)(g) (failure to provide proper care and custody).[1] We affirm.

Respondents divorced in August 2013, and respondent-father was awarded custody of the child. Respondents reconciled in late October 2013.

A protective services investigation was opened in May 2014 after police responded to a call about a child wandering around alone and found the instant child in his backyard, unattended, wearing only his underwear, one sock, and a T-shirt. Upon entering the house, the police officer found respondent-father lying flat on his back on the kitchen floor, a butcher knife next to him, respondent-mother in an apparently intoxicated state, and a man sitting on a couch asleep with a burnt cigarette between his fingers that was burning the crotch of his pants. A drug screen of respondent-father revealed high levels of hydrocodone and THC. Respondents met with a Families First worker on May 23, 2014 to discuss services and goals, but were terminated from the program two weeks later for lack of compliance. When a DHHS worker went to visit respondents thereafter, she learned that they had placed the child with a third party because they felt they were unable to care for him. They wanted the third party to serve as a guardian.

Petitioner asked the court to take jurisdiction over the child and, at the preliminary hearing held on the petition, respondents admitted to most of the allegations set forth therein, including their mental and physical health issues, drug use, prior history of domestic violence,

---

[1] Respondent-mother's parental rights were also terminated but she is not party to this appeal.

prior history of involvement with protective services, and the fact that their other two children were in guardianships. Respondent-father agreed that the court should take jurisdiction over the child and place him in foster care or with a self-designated guardian while he and respondent-mother worked on the issues currently preventing them from providing proper care and custody. The court found that a preponderance of the evidence supported its exercise of jurisdiction under MCL 712A.2(b)(1) (parents failed to provide proper support, education, medical, or other care necessary for child's health or morals) and (2) (parents' home unfit by reason of neglect, cruelty, drunkenness, criminality, or depravity). The court ordered separate, supervised visitation for respondents, which respondent-father took advantage of only once.

This was the last hearing respondent-father personally attended until the termination hearing approximately seven months later. The week before the July 9, 2014 dispositional review, respondent-father left Michigan without informing his caseworker, his attorney, the child, or the child's foster family where he was going and when he planned to return. It was not until mid- to late-November 2014 that respondent-father contacted his attorney and his caseworker and told them he was living in Wyoming. Respondent-father expressed a desire to regain custody of the child, but remained in Wyoming for several more weeks before returning to Michigan just in time to attend the termination hearing.

Respondent-father argues that the trial court erred in finding that the statutory grounds for termination had been met and that termination was in the child's best interests.[2]

Under MCL 712A.19b(3)(a)(*ii*), the court may terminate a parent's parental rights if it finds by clear and convincing evidence that the parent "has deserted the child for 91 or more days and has not sought custody of the child during that period." Specifically, respondent-father argues that the trial court clearly erred because it failed to make findings regarding his intent to abandon his child. Although MCL 712A.19b(3)(a)(*ii*) does not directly speak of an intent element, *In re B and J*, 279 Mich App 12, 18 n 3; 756 NW2d 234 (2008), observed that "[t]he dictionary definitions of the words 'desert' and 'desertion' indicate that desertion is an intentional or willful act."

"Intent is a mental attitude made known by acts," and may be "inferred from facts and circumstances established beyond a reasonable doubt." *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985). Respondent-father intentionally left Michigan the first week of July 2014. Thereafter, he did not contact or provide emotional or material support for the child and did not participate in a case-service plan or any proceedings during his absence. Neither his attorney nor his caseworker knew where he was until mid- to late-November 2014, well in excess of the 91-day threshold. Even after he told his attorney that he wanted "something to do" with the child, and told the caseworker he was going to return and try to regain custody, he still

---

[2] We review the trial court's findings that a ground for termination has been established and that termination is in the best interests of the child under the clearly erroneous standard. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

remained unavailable. He did not return to Michigan until the day before the January 15, 2015 termination hearing. His actions signaled no intention other than to abandon the child. Accordingly, the trial court did not clearly err in finding that statutory grounds were established under MCL 712A.19b(3)(a)(*ii*).

Under MCL 712A.19b(3)(c)(*i*), the court may terminate a parent's rights if 182 or more days have passed since issuance of an initial dispositional order and the court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

The conditions that led to adjudication for respondent-father included his inability to care for the child due to his physical health, substance abuse, and domestic violence. More than 182 days elapsed since the July 9, 2014 disposition order and the January 16, 2015 termination hearing. Respondent-father left the state rather than participate in services to rectify these conditions. He said that he and respondent-mother were not together, which the court discounted based on the record and the court's evaluation of respondent-father's credibility. Given the court's strong words regarding respondent-father's credibility (the court had a "firm conviction that [respondent-father has] lied throughout his testimony and that he's making everything up as it goes along"), it seems doubtful that the court would have accepted his assurances that he had weaned himself off prescription pills. Respondent-father testified that he had an appointment at the University of Michigan in February 2015 to address his medical condition, but, given his history with the University of Michigan Medical Center, the scheduling of the appointment is not a reliable indicator that he was committed to seeking treatment for his lung problems.

As for the likelihood that the conditions would be rectified in a reasonable time, respondent-father's history of state intervention in his parenting of his children supports the conclusion that there is little to no likelihood that the conditions would be rectified within a reasonable time. Respondent-father admitted to at least 16 years' experience with CPS in Michigan, and evidence was presented that he and respondent-mother had a history of child protective investigations in Florida and Wyoming, and that "every time a CPS complaint's opened, they abscond the state with the child." Respondent-father said he wanted to participate in a case-service plan so he could regain custody of the child, but again the court considered him not to be a credible witness. Respondent-father's actions did not signal a commitment, or even an inclination, to address his issues so he could regain custody of the child.

Respondent-father contends that he can provide proper care and custody for the child now that he no longer lives with respondent-mother, who, he maintains, "had all the mental and physical problems and was unable to care for" the child. Again, the court discounted his assurances that he was no longer involved with respondent-mother. The record contains no evidence that respondent-mother hampered respondent-father from caring for the child, nor implicates respondent-mother in respondent-father's desertion of the child, nor in respondent-father's failure to continue treatment for the lung problems he claimed contributed to his inability to care for the child.

Accordingly, the trial court did not clearly err in finding that statutory grounds were established under MCL 712A.19b(3)(c)(*i*).

Under MCL 712A.19b(3)(g), the court may terminate a parent's rights if it finds by clear and convincing evidence that the parent, "without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

Respondent-father clearly failed to provide proper care and custody in May 2014, when the four-year-old child was found outside, half-dressed and without adult supervision. Respondent-father was found on the kitchen floor, asleep or unconscious. Respondent-father claims, however, that he can provide proper care and custody for the child because he receives $1,400 per month from Social Security and has proven that, although he moves frequently, he can always find a home. However, homelessness and the inability to provide the necessities money can buy were never part of respondent-father's barriers to reunification. Respondent-father's issues involve domestic violence, substance abuse, and his physical health, and, for the reasons discussed above under MCL 712A.19b(3)(c)(*i*), there was no reasonable expectation that he would be able to provide proper care and custody within a reasonable time.

Accordingly, the trial court did not clearly err in finding that statutory grounds were established under MCL 712A.19b(3)(g).

Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* at 41-42. When making its best-interest determination, the court must consider whether the record as a whole proves by a preponderance of the evidence that termination is in the best interests of the child. *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

Respondent-father argues that termination was not in the best interests of the child because the child was bonded with him. The court noted that the child was attached to respondents. However, a child's bond with the biological parents is but one factor the court considers in its best-interest analysis. *Olive/Metts*, 297 Mich App at 41-42. Here, the court found that the child was doing well in the foster home and opined that it would be psychologically detrimental to "jerk him back into a birth family situation with his dad after having no contact for seven months." The court ruled out a guardianship based on his young age and the lack of suitable guardians. The court was also concerned that the child had begun to imitate what he had learned through observing the domestic abuse that existed between his parents, and opined that it was in his best interests to be in an environment where appropriate family relations were modeled. It concluded that the child needed the type of stability that adoption afforded. These reasons, plus the ample evidence of respondent-father's inability and/or unwillingness to address his barriers to reunification as described above, lead us to

conclude that the trial court did not clearly err by finding that termination of respondent-father's parental rights was in the child's best interests.

Affirmed.

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro