PEOPLE v TURNER

1. CRIMINAL LAW—EVIDENCE—WEIGHT OF EVIDENCE—NEW TRIAL—
   PRESERVING QUESTION.

   A motion for a new trial must be made in the trial court in order
   to preserve the issue of whether a criminal defendant's convic-
   tion is against the great weight of the evidence.                    \

2. CRIMINAL LAW—EVIDENCE—SUFFICIENCY OF EVIDENCE—REASONA-
   BLE DOUBT.

   Evidence is legally insufficient to justify a criminal conviction if
   that evidence cannot support a finding of guilt beyond a reason-
   able doubt.

3. HOMICIDE—MALICE AFORETHOUGHT—EVIDENCE—INFERENCES—LE-
   THAL WEAPONS. .

   Malice aforethought may be shown by inference and need not be
   proven by direct positive evidence; the use of a lethal weapon is
   the kind of evidence which will support an inference of an
   intent to kill.     .

4. SEARCHES AND SEIZURES—CONSENT TO SEARCH—VOLUNTARINESS OF
   CONSENT—RIGHT TO REFUSE CONSENT.

   The question of whether a consent to a police search was volun-
   tary is a question of fact to be determined from the totality of
   all the circumstances; no single factor, such as whether the
   defendant has knowledge of his right to refuse consent, is
   determinative.

5. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—CONSENT TO
   SEARCH—ADVICE OF RIGHTS—VOLUNTARINESS OF CONSENT.

   Failure of the police to advise a defendant of his right to refuse
   consent to a search made without a search warrant is not fatal

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur 2d, New Trial §§ 187, 188.
[2] 29 Am Jur 2d, Evidence §§ 224–226.
[3] 40 Am Jur 2d, Homicide §§ 45, 50, 51, 282, 283.
[4–7] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*
[7] Validity, under federal Constitution, of warrantless search of
    automobile—Supreme Court cases. 26 L ed 2d 893.

to the search, but merely constitutes one factor in the determination of the voluntariness of the consent.

6. Searches and Seizures—Consent to Search—Voluntariness of Consent—Officers Present.

The presence of a large number of police officers at the scene at the time a consent to a search was given does not make the atmosphere *per se* coercive for purposes of determining the voluntariness of a defendant's consent.

7. Searches and Seizures—Search Without Warrant—Advice of Rights—Right to Counsel—Consent to Search—Signed Consent—Custody—Coercion.

The search of a defendant's automobile without a warrant, but with the consent of the defendant, was proper where, even though the defendant was in custody when his written consent was obtained, he was advised of his right to consult with counsel before his decision to consent to the search, the defendant stated that he did not wish to consult with an attorney and signed a written statement consenting to the search of his automobile, and where there is no evidence of coercive or deceitful tactics employed by the police to gain the defendant's permission.

Appeal from Genesee, Thomas C. Yeotis, J. Submitted April 9, 1975, at Lansing. (Docket No. 18768.) Decided July 21, 1975. Leave to appeal denied, 395 Mich —.

Kenneth L. Turner was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *F. Jack Belzer,* Assistant Prosecuting Attorney, for the people.

*Dennis C. Karas,* for defendant on appeal.

Before: V. J. Brennan, P. J., and D. E. Holbrook and M. F. Cavanagh, JJ.

M. F. CAVANAGH, J. The defendant was convicted after a bench trial in Genesee County Circuit Court of second-degree murder, MCLA 750.317; MSA 28.549. He was sentenced to a prison term of 15 to 30 years and now appeals as of right.

Defendant and a companion, Dennis Mooney, visited several of the bars in the Flint area during the afternoon, evening and early morning of December 19 and 20, 1972. During a visit to a particular bar, they became involved in an argument with the bartender and several other people concerning the fact that a friend had been fired from his job at that bar. After the argument, the two left and went to another bar. At about 2:30 a.m., as the bar was closing, Mooney and the defendant returned. Donna Diebel testified at trial that, as she entered the bar from the back, Mooney said, "You're the one I want", and shot her in the chest. Other shots were fired, and the police subsequently discovered that the bartender, Jim Mugan, and another patron, Louis LaBombard, had been fatally wounded by shots fired by Mooney and the defendant.

At trial the defense theory was that defendant Turner had not intended to fire the shot which killed Louis LaBombard. He had been drinking heavily and was simply following Mooney around to the different bars. Defendant testified that when the shooting started he thought he saw LaBombard coming toward him, and he panicked and fired his gun in LaBombard's direction.

The first of defendant's two contentions of error is that the element of malice aforethought necessary for a second-degree murder conviction was not established beyond a reasonable doubt. Defendant's precise legal theory is not stated. Apparently his argument is either that his conviction was

against the great weight of the evidence or that the evidence was insufficient as a matter of law.

Defendant's argument that the conviction is against the great weight of the evidence is foreclosed by his failure to move for a new trial in the court below. *People v Matthews,* 53 Mich App 232; 218 NW2d 838 (1974). In any event, upon a review of the evidence presented at trial, we conclude that the trial court's decision was not manifestly against the clear weight of the evidence.

Evidence is legally insufficient for a criminal conviction if it could not support a finding of guilt beyond a reasonable doubt. *People v Williams,* 368 Mich 494; 118 NW2d 391 (1962), *cert den* 373 US 909; 83 S Ct 1297; 10 L Ed 2d 411 (1963). The defendant argues that since several psychiatrists testified at trial that the defendant did not intend to kill Louis LaBombard, there was no evidence on the issue. But malice aforethought need not be proven by direct positive evidence; it may be shown by inference. *Roberts v People,* 19 Mich 401 (1870). The use of a lethal weapon is the kind of evidence which will support an inference of an intent to kill. *People v Ray,* 56 Mich App 610; 224 NW2d 735 (1974). The defendant not only used a lethal weapon but shot at the victim three times. In addition, the other above-stated circumstances surrounding the crime further justify the trial judge's finding of fact that the defendant acted with intent to kill or do great bodily harm or with the knowledge that his actions created a strong probability of death or great bodily harm. See *People v McFee,* 35 Mich App 227; 192 NW2d 355 (1971). Since this factual determination is supported by evidence and is not clearly erroneous, defendant's contention is without merit.

Second, defendant argues that the trial court

erred in refusing to suppress evidence seized during a search of his car made without a search warrant after he had signed a consent form for the search.

After the defendant was arrested, the police informed him of his rights under *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966). Subsequently, the police requested that he consent to the search of his automobile. He was informed that he had a right to consult with an attorney before deciding whether to consent to the search and that if he could not afford an attorney, one would be provided for his assistance. The defendant gave his permission to the search and signed a consent form. The search produced the weapon which killed Louis La-Bombard.

We conclude that the trial court's denial of the suppression motion was correct. In *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973), the United States Supreme Court examined the question of what constitutes a voluntary consent to a police search. The Court held that no single factor is determinative. Instead the Court held that,

" * * * the question of whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent. As with police questioning, two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent—the legitimate need for such searches and the equally important requirement of assuring the absence of coercion." 412 US 218, 227.

The Court went on to reject the standard of *John-son v Zerbst,* 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938), that the prosecution must show an intentional relinquishment or abandonment of a known right or privilege. 412 US 218, 246.

The most recent opinion on consent searches by the Michigan Supreme Court is *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), in which the Court upheld a search without warrant of a defendant's apartment. The defendant in that case was not given his *Miranda* warnings and there were at one time ten members of the police department present who, after gaining defendant's permission, proceeded to conduct a general search of the entire apartment. Recognizing *Schneckloth,* the Court held that a failure to advise the defendant of his right to refuse admission was not fatal to the search and merely constituted one factor in the voluntariness determination. 393 Mich 342, 363. Also, the presence of a large number of officers did not make the atmosphere *per se* coercive. *Cf. People v Lumpkin,* 59 Mich App 304; 229 NW2d 426 (1975).

There is one important factor in the present case which is different than *Schneckloth* and *Reed.* The police requested defendant's consent while he was in custody at the police station. *Schneckloth* had this to say on the subject:

"By the same token, the present case does not require a determination of the proper standard to be applied in assessing the validity of a search authorized solely by an alleged consent that is obtained from a person after he has been placed in custody. We do note, however, that other courts have been particularly sensitive to the heightened possibilities for coercion when the 'consent' to a search was given by a person in custody. See, *e.g., Judd v United States,* 89 US App DC 64, 66; 190 F2d 649, 651 (1951), *Channel v United States,* 285 F2d 217

(CA 9, 1960), *Villano v United States,* 310 F2d 680, 684 (CA 10, 1962), *United States v Marrese,* 336 F2d 501 (CA 3, 1964)." 412 US 218, 240 n 29.

Thus in reviewing the circumstances surrounding the "consent", we must be particularly sensitive to the "heightened possibilities for coercion" in a custodial atmosphere. Regardless of whether or not probable cause existed, the police had a good reason to request the defendant's permission to search the car. They had not been able to locate the murder weapon, and they knew that the defendant was in some way involved in the affray. According to the police officers' version of the facts, which was accepted by the trial court, no coercive or deceitful tactics were employed by them to gain defendant's permission. It is important to consider the fact that the defendant had just previously been given his full *Miranda* warnings, including his right to remain silent and the warning that anything he said could be held against him.

Concerning the search of his automobile, the police specifically related the defendant's right to consult with counsel (and to have one furnished if necessary) before his decision of whether to consent to the search. The defendant stated that he did not wish to consult with an attorney and signed a written statement consenting to the search of his automobile.

Under these circumstances, we hold that the consent was voluntarily given. Whether the defendant must always be informed of his right to refuse permission to a police search or of his right to consult with counsel before giving his consent—in the situation in which the consent is sought while the defendant is in custody—we need not answer. However, it is well to remember the words

of Justice Stewart in *Schneckloth* that police and courts must be particularly sensitive to make sure that the inherently coercive tendencies of being in custody do not adversely affect the defendant's exercise of his free will in deciding whether to consent to a search. Since the police adequately performed that task, the defendant's consent was voluntarily given and the weapon was properly admitted into evidence.

Affirmed.