PEOPLE v JACOBSON

OPINION OF THE COURT

1. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY—PRE-
   SERVING QUESTION—TIMELY OBJECTION.

   The Court of Appeals will not reverse a conviction because of
   instructional error in the absence of manifest injustice where
   there had been no timely objection to the instructions.

2. CRIMINAL LAW—ASSAULT WITH INTENT TO COMMIT MURDER—IN-
   STRUCTIONS TO JURY—DEADLY WEAPONS—INTENT OF DEFEND-
   ANT.

   A trial judge's instructions in a trial on a charge of assault with
   intent to commit murder which informed the jury that they
   were to decide the fact question of whether a deadly weapon
   had been used in such a manner to unjustifiably take life and
   that if it were determined that a weapon was so used then the
   legal conclusion of malice was permissible did not remove the
   element of a defendant's intent from the jury.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 553.
   75 Am Jur 2d, Trial § 906.
[2] 40 Am Jur 2d, Homicide §§ 570–572.
   Assault: intent to do physical harm as essential element of crime of
   assault with deadly or dangerous weapon. 92 ALR2d 635.
[3] 21 Am Jur 2d, Criminal Law §§ 185, 494.
[4] 75 Am Jur 2d, Trial §§ 902–905.
[5] 29 Am Jur 2d, Evidence § 264.
[6] 29 Am Jur 2d, Evidence § 161.
   Presumption upon presumption: modern status of the rules against
   basing an inference upon an inference or a presumption upon a
   presumption. 5 ALR3d 100.
[7] 21 Am Jur 2d, Criminal Law §§ 368, 369.
   Admissibility of evidence of showup identification as affected by
   allegedly suggestive showup procedures. 39 ALR3d 791.
[8] 21 Am Jur 2d, Criminal Law §§ 303, 527 (supp).
   Presentence reports: defendant's right to disclosure of presentence
   reports. 40 ALR3d 681.
[9] 52 Am Jur 2d, Malice §§ 5, 7.

3. Criminal Law—Appeal and Error—Lesser Included Offenses—Instructions to Jury—Innocent of Greater Offense—Unanimous Decision.

No reversible error occurs where a trial court does not instruct that a jury must unanimously find a defendant innocent of a greater offense before moving on to consider a lesser offense.

4. Criminal Law—Instructions to Jury—Order of Consideration of Instructions.

The order in which instructions were considered by a jury is not a basis for reversing a defendant's conviction.

5. Criminal Law—Evidence—Elements of Crime—Direct Evidence—Circumstantial Evidence.

The elements of a crime may be established by direct or circumstantial evidence.

6. Criminal Law—Evidence—Inferences—Facts.

Inferences may be drawn from facts, but inferences may not be built upon other inferences.

7. Criminal Law—Appeal and Error—Preserving Question—Photographic Identification— Witnesses.

A defendant's claim that reversible error occurred because a complainant was allowed to testify concerning an identification of the defendant at an in-custody photographic show-up will not be reviewed by the Court of Appeals where the defendant was represented by counsel who was present at the show-up and there was no objection through pretrial motion, at trial or by motion for a new trial.

8. Criminal Law—Assault—Sentencing—Statement of Sentencing Judge—Presentence Report—Statement of Defendant.

A sentencing judge's expression of belief after a defendant's conviction of assault with intent to commit murder that the defendant's assault occurred during a hold-up was not reversible error where a presentence report contained a statement by the defendant indicating that the shooting of the victim occurred during an attempted hold-up.

Dissent by N. J. Kaufman, J.

9. Criminal Law—Malice—Permissible Inference—Presumption—Instructions to Jury—Jury Question.

*Malice is a permissible inference which may be drawn by the jury rather than a presumption of law, and it is reversible error for*

*a trial judge to give instructions to a jury which takes the determination of malice away from the jury.*

Appeal from Wayne, Thomas J. Foley, J. Submitted June 14, 1976, at Detroit. (Docket No. 22279.) Decided December 2, 1976. Leave to appeal applied for.

Robert W. Jacobson was convicted of assault with intent to commit murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: V. J. BRENNAN, P. J., and N. J. KAUFMAN and R. H. CAMPBELL,* JJ.

V. J. BRENNAN, P. J. The defendant, Robert W. Jacobson, was charged with assault with intent to commit murder contrary to MCLA 750.83; MSA 28.278. At a jury trial held on June 11, 1974, the defendant was convicted of the charge. On July 1, 1974, he was sentenced to 25 to 45 years imprisonment.

At trial, the complainant, Beverly Hurtig, testified that on December 14, 1973, she was working alone at the Liberty Loan Company when a man, later identified by her as the defendant, came in and asked for a loan. She asked him to have a seat and she sat opposite him. Mrs. Hurtig took the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

information required for the loan application. After the application was completed, Mrs. Hurtig told the applicant to call or come back at one o'clock to find out if the loan had been approved.

At this time the applicant pulled out a gun, and after determining that Mrs. Hurtig was alone, told her to go to the back of the office and right out the back door. She attempted to run, but slipped on the ice in the alley. She heard a shot fired, got up, ran, slipped and fell again, and was shot in the arm as she was getting up. She did not see or hear the assailant follow her. She did not look back, nor did she see the shots fired. A shell casing was later found in the alley by the police.

On the day of the assault on Mrs. Hurtig, Detective Forest Henry of the Dearborn Police Department saw her at the hospital and obtained a description of her assailant from her. Detective Henry then caused a teletype of the description obtained to be sent to the other police departments in the Detroit metropolitan area. Mrs. Hurtig was released from the hospital on December 24, 1973. On December 27, 1973, the defendant was taken into custody by Officer George Harper of the Livonia Police Department. On that same day, Detective Henry received a teletype from the Livonia Police Department that they had a party in custody who fit the description which he had sent out on December 14, 1973.

Detective Henry testified that Mrs. Hurtig was then informed "that a suspect was in custody and a show-up would be conducted to see if she could identify this party". Mrs. Hurtig testified that on the day of the photographic identification, Detective Henry called and told her that he would like her to come to a show-up and that "they think they have who did it". The photographic identifica-

tion took place on January 18, 1974. Mrs. Hurtig was shown eight photographs and identified the defendant as her assailant. An attorney representing the defendant was present.

When the defendant was arrested, he was in possession of a gun. Defendant claimed an alibi defense and put in evidence a written statement by his sister that he was at home until about 12:30 p.m. on the day in question.

The judge instructed the jury on the charged offense of assault with intent to commit murder, and also instructed on first and second-degree murder, premeditation, malice aforethought, and intent. He instructed, among other things, that the law implies intent from the use of a deadly weapon in a particular manner, a fact question for the jury to decide. The judge's charge covers the elements of felony murder, robbery, armed robbery and larceny. He instructed the jury that the commission of an act constitutes the intent. The judge told the jury that the possible verdicts were to be considered in order from the charged offense through the lesser included offenses and finally to innocent, and that they were not to consider the next lesser offense unless the facts did not support the higher offense.

At sentencing, the judge told the defendant that the assault "occurred in the process of a hold-up", and that "[i]t is bad enough when you use a loaded revolver to hold somebody up, but when you start shooting at them attempting to murder the person, then I have no tolerance whatsoever".

Defendant filed a timely claim of appeal, and now brings this appeal of right without having filed a motion for a new trial. On appeal, defendant raises various allegations of error.

Defendant first argues that the trial court erred

by instructing that the law implied malice from an assault with a deadly weapon and that the law presumed a person committing such assault intended to take a life.

The instruction the court gave read in relevant part:

"The term malice is a wrongful act done intentionally without legal justification or excuse. The law implies an unjustified or unexcusable killing, the existence of that wicked disposition as the term or terms malice afore-thought, when a man or woman assaults another with a deadly weapon in such a manner that the natural orderly use of such weapon, in such a manner to take a life. The law presumes that such a person committing the assault intended to take the life."

No objection was raised to this instruction. Consequently, we will not reverse unless the charge as a whole demonstrates manifest injustice. GCR 1963, 516.2. *People v Branner,* 53 Mich App 541, 544; 220 NW2d 183 (1974), *People v Paduchoski,* 50 Mich App 434, 435; 213 NW2d 602 (1973). See *People v Green,* 34 Mich App 149, 151; 190 NW2d 686 (1971).

We will, in light of *People v Martin,* 392 Mich 553, 560–562; 221 NW2d 336 (1974), however, look at this portion of the charge. That portion of the charge which instructs "when a man or a woman assaults another with a deadly weapon in such a manner that the natural orderly use of such weapon, in such a manner to take a life" is clearly a fact question for the jury, it has not been taken away from them. Once they make the determination as to whether the deadly weapon was or was not used in such a manner to unjustifiably take life, then, if their findings on this question are affirmative, the legal conclusion of malice is per-

missible. Therefore, the charge here is distinguishable from the *Martin* case.

On review of the full instructional record, we do not find the court instructed so as to remove the element of intent *as a matter of law,*[1] nor do we believe the court's instruction, taken as a whole, demonstrates manifest injustice. *People v Branner, supra,* at 544.

Defendant alleges secondly that the trial court's instruction on intent in which he included references to premeditated murder, felony murder, second-degree murder, robbery and larceny was so unintelligible that reversal must be ordered. We do not find merit in this claim. No objection was raised, so we will not reverse unless manifest injustice appears. GCR 1963, 516.2. *People v Paduchoski, supra,* at 435.

Defendant next contends that reversible error occurred when the court instructed the jury as to the manner in which they should consider the relevant lesser included offenses. The court instructed in the following way:

"In this case, the following included offenses will be considered by the jury. If they—in the order in which they are to be considered, namely, after you have considered Assault with Intent to Murder, if you find that is proven well then, of course, you wouldn't go into the lesser offenses. If you found the facts as you find them to be do not support the charge as made and as

---

[1] The trial court instructed in the following way regarding the concept of intent:

"Now intention is something that adults in carrying out their functions and movements do not often express. It is something that takes place in the mind. It is something that the jury must determine based upon all the acts surrounding the events. What was done. How it was done. We all, so to speak, telegraph our intentions by our acts. The reason I do such and such indicates that I intented *[sic]* to do that. So you will determine the intent from all the facts of this case, what was done, what was said, how it was done, how it was said, how it was carried out."

defined by the Court, then you would move to the next included offense and that is Assault with Intent to do Great Bodily Harm less than the crime of Murder. You will make your make your *[sic]* consideration of that. If you find that to exist, then you stop there. If you find Assault with Intent to do Great Bodily Harm less than the crime of Murder and it is not proven by the facts as you found them to be, then you would move to the next included offense which would be Felonious Assault and the same procedure would be applied. If you found that to exist then you would stop at that point. That would be your verdict. If you found that not to exist then you move to the next included offense which would be Assault and Battery. You make a determination then if the facts fit that particular crime as that is defined for you and that would be your verdict. If you find your facts not to support that offense then your verdict would be not guilty.

* * *

"We have the following possible verdicts. Defendant is guilty of Assault with Intent to Commit Murder as charged or defendant is guilty of Assault to do Great Bodily Harm less than the crime of Murder or defendant is guilty of Felonious Assault or defendant is guilty of Assault and Battery or defendant is not guilty. The considerations will be in that order."

No objection was raised to this charge and so we will not reverse unless manifest injustice appears. GCR 1963, 516.2. *People v Robert Hall,* 56 Mich App 10, 16; 223 NW2d 340 (1974). The options were clear.

Recent decisions of this Court clearly indicate that no reversible error occurred here where the trial court did not instruct that the jury must unanimously find the defendant innocent of the greater offense before moving on to consider a lesser offense. *People v Don Francisco Lopez,* 65 Mich App 653, 655–656; 237 NW2d 599 (1975),

*People v Waldron,* 64 Mich App 648, 650–655; 236 NW2d 732 (1975), *People v Bankston,* 61 Mich App 275, 278–280; 232 NW2d 381 (1975).

Further, the Michigan Supreme Court has likewise indicated no specific disposition to reverse due solely to the order in which instructions were considered. *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976). With no clear precedent to the contrary, we will follow the decisions of this Court. In any case, there is no manifest injustice present here.

Defendant next argues that the evidence was insufficient to convict because the jury was forced to speculate or, alternatively, to find the requisite intent by basing one inference on another. We find no merit to these arguments.

The factual evidence upon which the elements of the crime were found can be described in this way: (1) the defendant pulled a gun on Mrs. Hurtig and told her to go to the back of the office; (2) several shots were fired at Mrs. Hurtig as she attempted to escape and she was wounded by one shot; and (3) the shell casing found at the scene of the crime matched shell casings from a gun subsequently found in the defendant's possession.

Elements can be established by direct or circumstantial evidence. *People v Davis,* 57 Mich App 505, 508–509; 226 NW2d 540 (1975). Further, inferences may be drawn from these facts, though inferences may not be built upon other inferences. *People v Atley,* 392 Mich 298, 310–311, 314–316; 220 NW2d 465 (1974).

Given the above facts, we do not believe any double inference problem arose in this case. We feel that the firing of several shots at Mrs. Hurtig as she attempted to escape reasonably evidenced an intent to kill. *People v Turner,* 62 Mich App 467, 470; 233 NW2d 617 (1975). We find the evi-

dence sufficient without speculation to support the inferences that needed to be made.

Defendant next alleges that reversible error occurred because complainant was allowed to testify concerning her identification of defendant at an in-custody photographic show-up.

Defendant's counsel did not object through pretrial motion, objection at trial or motion for new trial. As a rule, we refuse to review a claim under these circumstances. *People v Palmer,* 47 Mich App 512, 515–516; 209 NW2d 710 (1973). We choose to apply the rule here, where defendant was represented by counsel and counsel was present at the photographic show-up.

Defendant contends finally that the court erred reversibly by incorrectly expressing the belief at sentencing that the assault in this case occurred during a "hold-up". Although evidence at trial did not disclose any express statement by defendant to hold up the complainant, defendant's statement in the presentence report did and the trial court at sentencing can rely on that statement. Regardless, if the presentence statement did not indicate his intent to hold up complainant, there would be no need for resentencing as the nature of the defendant's actions during this offense are just as reprehensible, we are sure they would have caused the trial judge no less concern.

Conviction affirmed.

R. H. Campbell, J., concurred.

N. J. Kaufman, J. *(dissenting).* I respectfully dissent.

I cannot escape the conclusion that the charge in the instant case comes within the dimensions of *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974), and is therefore reversible error.

The majority are engaged in the delicate task of circumventing the clear applicability of *Martin* by arguing that the instant charge taken as a whole left to the jury's determination the existence of that important element "malice aforethought". With this view I cannot agree.

A detailed attack of their reasoning is unnecessary. We adhere to a system in which a defendant is allowed to have a jury determine his guilt or innocence. Despite assertions by the majority to the contrary, the logical result of the instant charge is to foist upon the jury the court's resolution of the material and crucial element of malice and render nugatory their discretion on this matter. As Justice FITZGERALD stated in *Martin,* p 561: "Michigan has long ago considered malice a permissible inference to be drawn by the jury rather than a presumption of law." Consequently, I find it inescapable that the instant charge took the crucial determination of malice outside the domain of the jury in clear violation of *Martin.*

As a result of my disposition on the *Martin* error, I need intimate no view on the remaining contentions of error.

I would reverse and remand for a new trial.