*In re* DANA JENKINS

WAYNE COUNTY PROSECUTOR v RECORDER'S COURT JUDGE

Docket No. 82356. Argued November 8, 1990 (Calendar No. 3). Decided September 6, 1991.

Dana E. Jenkins and Orrin Cuthbertson each pleaded guilty in the Detroit Recorder's Court, Dalton A. Roberson, J., of one count of armed robbery and one count of possession of a firearm during the commission of a felony. Jenkins was sentenced to four and one-half to fifteen years for the armed robbery, plus two years for the felony-firearm conviction, while Cuthbertson was sentenced to two to ten years for the armed robbery conviction, plus two years for the felony-firearm conviction. Jenkins moved for resentencing, arguing that the disparity between the sentences was not justified. The court resentenced Jenkins. The prosecutor filed a complaint for superintending control in the Court of Appeals, contending that the trial court did not have the authority to resentence the defendant. The Court of Appeals, WAHLS, P.J., and SAWYER and C. W. SIMON, JJ., vacated the trial court's order and reinstated the defendant's original sentence, concluding that a trial court cannot resentence a defendant unless the original sentence is invalid and that because the disparity between the sentences did not necessarily render Jenkins' sentence invalid, the trial court was without authority to resentence him. The Court further found that *People v Coles,* 417 Mich 523 (1983), vests review of a sentence in the appellate courts, not the trial court (Docket No. 88363). Leave to appeal was limited to the question whether the trial court had the authority to resentence the defendant. 434 Mich 899 (1990).

In an opinion by Justice BOYLE, joined by Justices BRICKLEY, RILEY, and GRIFFIN, the Supreme Court *held:*

Because the defendant's original sentence was not invalid, the trial judge could not set it aside and impose a new sentence.

1. A court's authority to resentence a defendant depends

REFERENCES

Am Jur 2d, Criminal Law § 580.

See the Index to Annotations under Amendment; Change or Modification; Sentence and Punishment.

upon whether the original sentence is valid. While a trial court may correct an invalid sentence, it may not modify a valid sentence after it has been imposed except as provided by law. Procedural protections for sentence review currently in effect are sufficient to meet the interest in achieving justice in particular cases. Considerations of finality and administrative consequences counsel against recognition of an additional vehicle to permit further sentence modification by trial courts.

2. In this case, the sentence imposed was well within the recommended sentencing guidelines. Further, it was individualized and tailored to fit the circumstances of the defendant and the case. The trial court was not required to consider the sentence given to the codefendant. In addition, the two codefendants were not similarly situated. Despite the trial court's inability to discern upon review the reasons for the initial decision to sentence the defendants differently, the disparity between the sentences was justified, and did not render the defendant's original sentence invalid.

Affirmed.

Chief Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that sentence correction and parity comports with the principles of sentencing discretion, sentencing review, and proportionality of sentencing. If there is such a sentencing error, the trial court should vacate the sentence and correct it. The Court of Appeals merely can declare a sentence invalid; it has no authority to resentence. It is the trial court that must reëxamine the sentence and act to correct it. It would be an exercise in judicial economy to permit error correction at the trial court level to avoid the need for an appeal and for a remand for resentencing in situations where an admitted judicial error has occurred. The sentencing judge is in the best position, at least in the first instance, to determine whether an error has occurred.

Even though the sentence in this case may have been legally valid, justice requires a vehicle for correcting an admitted sentencing error. A court rule should be promulgated, expressly allowing for the timely correction of sentencing errors by the trial court. Although a sentence is final and not amenable to correction after the time for appeal has passed, there is no constitutional or statutory reason not to allow correction of a sentence during the time allowed for posttrial motions.

Justice MALLETT took no part in the decision of this case.

164 Mich App 740; 417 NW2d 594 (1987) affirmed.

CRIMINAL LAW — SENTENCING — RESENTENCING.

Where an original sentence is valid, a trial court is without authority to set it aside and impose a new sentence.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Research, Training and Appeals, and *Don W. Atkins,* Principal Attorney, Appeals, for the plaintiff.

*Gerald M. Lorence* for the defendant.

Amicus Curiae:

*Anne Yantus,* Assistant Defender, for the State Appellate Defender Office.

BOYLE, J. We granted leave to appeal in this case to determine whether the trial court had the authority to resentence the defendant. We conclude that the trial court did not have such authority, because the defendant's original sentence was valid. We decline the invitation to overrule *People v Whalen,* 412 Mich 166; 312 NW2d 638 (1981), and affirm the decision of the Court of Appeals.

I

On March 12, 1985, defendant Jenkins and co-defendant Orrin Cuthbertson each pled guilty of one count of armed robbery, MCL 750.529; MSA 28.797, and one count of possession of a firearm during the attempt or commission of a felony, MCL 750.227b; MSA 28.424(2). The convictions arose out of an incident that occurred on February 8, 1985. As two people left a store and walked toward their car, the defendants approached them. Defendant Jenkins pointed a gun at the complainant, demanding her purse, while codefendant Cuthbertson pointed a gun at the other victim. After a struggle between the com-

plainant and defendant Jenkins, the purse was taken and the defendants ran away.

On April 4, 1985, defendant Jenkins was sentenced to four and one-half to fifteen years for the armed robbery conviction, plus two years for the felony-firearm conviction. The sentencing guidelines recommendation for the armed robbery offense was thirty-six to seventy-two months. Codefendant Cuthbertson was sentenced to two to ten years for the armed robbery conviction, plus two years for the felony-firearm conviction. The sentencing guidelines range for his robbery conviction was eighteen to twenty-four months.

On September 20, 1985, defendant Jenkins moved for resentencing, arguing that the disparity between the sentences was not justified. Unable to account for the difference,[1] the trial court resentenced Jenkins to two to ten years for the armed robbery conviction, the sentence imposed on codefendant Cuthbertson.

The prosecutor filed a complaint for superintending control in the Court of Appeals, contending that the trial court did not have the authority to resentence the defendant. The Court of Appeals agreed, concluding that a trial court cannot resentence a defendant unless the original sentence is invalid. 164 Mich App 740, 743; 417 NW2d 594 (1987). Since the disparity between the sentences of the two codefendants did not necessarily render Jenkins' sentence invalid, the trial court was without authority to resentence him. The panel further stated that *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), vests review of a sentence in the

[1] *The Court:* Well it appears that there is nothing in the record that shows any rationale for me varing [sic] between the two sentences between him and the codefendant. I don't know why I did it.

appellate courts, not the trial court. The Court of Appeals vacated the resentencing order and reinstated the defendant's original sentence for the armed robbery conviction.

We granted leave to appeal, limited to the question whether the trial court had the authority to resentence this defendant. 434 Mich 899 (1990).

II

It is well-settled law in this state that a court's authority to resentence a defendant depends on whether the previously imposed sentence is valid. Beginning with our decision in *In re Mason,* 8 Mich 70 (1860), in which we found that the trial court did not have the right to resentence the defendant even if the original sentence was imposed under a mistaken belief regarding the defendant's age, we have consistently held that trial courts do not have the power to resentence a defendant after a valid sentence has been imposed. Various rationales underlie these decisions.

In *People v Fox,* 312 Mich 577; 20 NW2d 732 (1945), we set aside an order amending a valid sentence, reasoning that, since the Governor's powers of commutation are exclusive, *People v Freleigh,* 334 Mich 306; 54 NW2d 599 (1952); Const 1963, art 5, § 14, a trial court's amendment of a sentence infringes on the executive branch's powers of commutation and also violates the jurisdiction of the parole board. *Fox,* p 582. Other decisions emphasize the fact that once the defendant begins serving the original sentence, even one day of it, the authority over the defendant passes out of the trial court's hands by its own order. See *People v Meservey,* 76 Mich 223, 226; 42 NW 1133 (1889); *People v Dotson,* 417 Mich 940; 331 NW2d 477 (1983) (a trial court is without authority to set

aside a valid sentence once the defendant is remanded to jail to await the execution of his sentence).

The rule announced in these cases is also stated in the recently enacted MCR 6.429, which although not yet effective at the time of defendant's resentencing is plainly premised on the cited cases and is thus nonetheless instructive. The rule states that a court "may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law."[2] Thus, while sentence review is generally a province of the appellate courts, trial courts do have the authority to review and correct a sentence.[3]

[2] An example of a modification provided by law is MCL 801.257; MSA 28.1747(7), authorizing trial courts to reduce a sentence by one-quarter for good conduct.

[3] In *People v Whalen, supra,* pp 169-170, we cited several examples of "invalid" sentences subject to a trial court's review:

> A court's authority to resentence depends, therefore, on whether the previously imposed sentence is invalid. Clearly a sentence beyond statutory limits is invalid. A sentence within statutory limits may also be invalid on a number of grounds. It is invalid if the sentencing court relies on constitutionally impermissible considerations, such as the defendant's constitutionally infirm prior convictions, or improperly assumes a defendant's guilt of a charge which has not yet come to trial, or the court fails to exercise its discretion because it is laboring under a misconception of the law, or conforms the sentence to a local sentencing policy rather than imposing an individualized sentence. More recently, this Court has held invalid sentences which do not comply with essential procedural requirements such as failure to utilize a "reasonably updated" presentence report or to provide the defendant and his counsel with the opportunity to address the court before sentence is imposed. [Citations omitted.]

The defendant and amicus curiae State Appellate Defender Office urge that notions of efficiency justify a trial court's broad authority to resentence the defendant to avoid the cost and delay of proceeding through the appellate courts. But even courts of appeal are without the authority to set aside a *valid* sentence; rather, the sentence must be found disproportionate, or otherwise invalid, before an appellate court can overturn it. *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990).

Although the notion that sentences should be subject to later modification by the trial court has some surface appeal, we conclude that countervailing considerations counsel against recognizing the principle contended for. In the current legal culture, the trial judge must bring to bear at the moment of sentencing all the knowledge, experience, and ability available, because the decision made at that moment will be that judge's ultimate ruling. The sentencing process is carefully designed to ensure conscientious and informed decision making as of that moment. Every effort is made to ensure that the judge has adequate and accurate information upon which to base the sentencing decision. Sentencing occurs only after the defendant, the defendant's attorney, the prosecutor, and the victims have all had the opportunity to present their views to the court. MCR 6.425. In addition, the presentence report is prepared to provide the court with as much information as possible so that the sentence can be tailored to fit the circumstances. The parties have the opportunity to review the presentence report and to challenge the accuracy[4] of any information it contains in advance of sentencing. MCR 6.425. The current system encourages the judge to thoughtfully consider every factor before sentencing the defendant.

We are persuaded that permitting the trial judge to revisit the sentencing decision may erode judicial accountability. Undermining the finality of the decision might foster carelessness or intrude upon the degree of conviction that ought to attend

---

[4] This case itself illustrates that finality of sentence proximate to the conviction encourages accuracy. When asked several months later to review the sentences imposed on the two codefendants, the trial judge was unable to remember the fact that there was a difference between the defendant and the accomplice, i.e., that the defendant had hit the victim while holding a gun to her head.

such a solemn pronouncement. In addition, when the judge who originally imposed the sentence is no longer on the bench or is unavailable, a new judge, unfamiliar with the record and without the benefit of observing live testimony, will be permitted to review the sentence, without the ability to closely tailor sentences to the unique facts of the particular case.

A new procedure allowing sentences to be reconsidered at the trial court level also opens the door to possible abuse. Requiring a trial judge to revisit sentencing in a high profile case opens a window to extraneous considerations. Even if inappropriate concerns actually have no bearing on a trial judge's decision to alter the sentence, the public may perceive that the change in sentence resulted from the publicity. Public respect and confidence in the criminal justice system's ability to sentence may be compromised.

We are also concerned with the administrative burden imposed by recognizing the authority to reimpose a valid sentence. Requiring the sentencing judge to review valid sentences will inevitably lead to increased challenges, further burdening a court system that is already having difficulty handling the increased number of criminal cases. Providing for an additional review of the sentence may result in a battle of attrition. A prisoner, having nothing to lose, may seek a reduced sentence again and again at an unacceptable cost to the criminal justice system. Additionally, since the Supreme Court has held that a sentence does not have the qualities of constitutional finality that attend an acquittal, *United States v Addonizio*, 442 US 178; 99 S Ct 2235; 60 L Ed 2d 805 (1979), recognition of such a right at the behest of the defendant would doubtless lead to claims for recognition of the prosecutor's right to petition the

sentencing court for an increase of sentence.[5] Thus, the Michigan Supreme Court's Sentence Review Committee considered, but declined to recommend the adoption of, a court rule allowing the trial judge to reconsider the sentence within 120 days of its imposition.[6] The committee forecasted "an unacceptable burden on the criminal justice system by attracting an excessive number of motions to reconsider." Report and Recommendation of Sentence Review Committee, July 19, 1982, p 17.

While considerations of finality and of administrative consequences might alone not persuade us to adhere to our holding in *Whalen* if we were convinced that such a process was necessary, we believe it is not. The system of sentence review in Michigan already guarantees adequate opportunity to correct errors. If the sentence is invalid, a trial judge is entitled to resentence the defendant pursuant to MCR 6.429. The trial court is also empowered to correct substantive mistakes pursuant to MCR 6.435(B), including an action taken under a misapprehension of its authority. The verdict can be set aside pursuant to MCR 6.431. If the finding of guilt is unfair, the trial court is entitled to order a new trial "on any ground that would support

[5] The report of the Citizens' Commission to Improve Michigan Courts observed that "[o]f course, no prosecutor could ever be permitted to appeal an acquittal, but the People's attorney should have access to the appellate courts on approximately the same terms as a defense attorney."

[6] The Sentence Review Committee considered the adoption of the predecessor to FR Crim P 35. That rule was substantially changed when the federal courts revamped their sentencing procedures along with the implementation of federal sentencing guidelines. See S Rep No 98-225, 98th Cong (2nd Sess), reprinted in 1984 US Code Cong & Ad News 3182, 3339-3341. The current rule provides for correction of a sentence "that is determined on appeal under 18 USC 3742 to have been imposed . . . as a result of an incorrect application of the sentencing guidelines, or to be unreasonable, upon remand of the case . . . ." F R Crim P 35.

appellate reversal of the conviction or because it
believes that the verdict has resulted in a miscar-
riage of justice." MCR 6.431(B). Significantly, since
our decision in *Whalen,* this Court has greatly
expanded review of sentences. The defendant may
challenge the scoring of the sentence guidelines,
MCR 6.429, and challenge an "invalid sentence"
through the newly created procedure for post-
conviction relief and may seek relief from an
allegedly excessive sentence under *Coles, supra,*
*People v Moore,* 432 Mich 311; 439 NW2d 684
(1989), and *People v Milbourn,* 435 Mich 630; 461
NW2d 1 (1990). If appellate challenges are success-
ful, the trial judge is authorized to reduce the
sentence, absent legislative direction to the con-
trary.

Chief Justice CAVANAGH suggests the adoption
of a court rule "expressly addressing the correc-
tion of sentencing error, limited to the time for
appeal . . . ." (*Post,* p 383.) Chief Justice CAV-
ANAGH contends that there is "no constitutional or
statutory reason not to allow a correction of sen-
tence during the time allowed for posttrial mo-
tions." (*Id.*) Because there may be no reason pro-
hibiting the adoption of such a rule does not mean
that it would be a positive change. The time
within which various appeals and posttrial mo-
tions can be filed may extend for longer than
eighteen months.[7] Thus, the idea of allowing trial

---

[7] MCR 7.204 sets forth the time requirements for filing an appeal of
right in a criminal case. MCR 7.205 sets forth time limitations for
appeals by application. A criminal defendant is entitled to claim an
appeal within forty-two days after entry of an order denying a timely
request for appointment of a lawyer, after entry of the judgment of
order appealed from, or after entry of an order denying a motion for
new trial, for judgment of acquittal, to withdraw a plea, or for
resentencing if the motion was timely filed. MCR 7.204(2). A criminal
defendant is entitled to file a delayed application for leave to appeal
for eighteen months after entry of the order or judgment appealed
from. Furthermore, the eighteen-month limitation does not apply if

court review of the sentences during the time for appeal would not ensure that the time span was short or that the sentencing process would be improved.

In support of his proposed rule change, Chief Justice CAVANAGH relies upon the text of revised FR Crim P 35 and *United States v Cook,* 890 F2d 672 (CA 4, 1989). Congress amended rule 35 as part of the Sentencing Reform Act of 1984, PL No 98-473, tit II, § 215(b), 98 Stat 1837, 2015. The purpose of that amendment was to impose finality onto the sentencing system by preventing the trial court from revisiting its sentencing decisions. The Fourth and Second Circuit Courts of Appeals recognized a narrow exception based upon the trial court's inherent authority to modify an ''acknowledged and obvious'' mistake prior to the sentence becoming final. *Cook, supra,* p 675; *United States v Rico,* 902 F2d 1065 (CA 2, 1990). The corrections contemplated by these courts do not encompass a trial court's change of mind about the sentence. Rather, they are limited to circumstances in which a particular sentence was intended to be imposed but a different sentence was actually imposed because of an acknowledged mistake. The proposed revision to FR Crim P 35 codifies the result in those cases, but provides a more stringent time requirement to reduce the likelihood of jurisdictional problems and to lessen the possibility of abuse. It authorizes correction of obvious errors or mistakes which would ''certainly result in a re-

the defendant files the application for leave to appeal within twenty-one days after the court decides a motion for new trial, for judgment of acquittal, to withdraw a plea, or for resentencing, if the motion was filed within eighteen months, or if the defendant has filed a delayed request for appointment of counsel within the eighteen-month period, the defendant or his lawyer has ordered the appropriate transcripts within twenty-eight days of service of the order granting or denying the request for counsel, and the application was filed within forty-two days after the filing of the transcript. MCR 7.205(F).

mand of the case to the trial court for further action under Rule 35(a)." Committee Note to FR Crim P 35, to be effective December 1, 1991.[8]

To be sure, the panoply of extant vehicles for review of sentences does not guarantee there will not be some sentences that reasonable minds think should be lower (or higher). What is apparent, however, is that there is no persuasive evidence of a need to recognize an additional vehicle for those few cases. The system is designed to deliberately encourage thoughtful decision making by the trial judge and appellate scrutiny of that decision. The interest in achieving justice in a particular case is sufficiently met by the procedural protections in effect.

### III

The question in this case, then, is whether the defendant's original sentence was invalid. The defendant contends that his original sentence was invalid because the trial court's mere reference to the sentencing guidelines was not a sufficient articulation of the reasons for imposing the sentence of four and one-half to fifteen years for the armed robbery conviction. We disagree.

A sentencing judge must articulate on the record the reasons for imposing the sentence given in order to justify the sentence and to help develop the rationales on which future sentences are to be based. *People v Coles, supra.* When the sentence imposed is within the recommended sentencing

---

[8] The facts in this case would not "certainly result" in a remand to the trial court under rule 35(a). The disparity between defendant Jenkins' sentence and that of his codefendant would not necessarily render Jenkins' sentence invalid. Nor did the trial court point out an obvious error or mistake that required correction; the trial judge simply could not remember the basis upon which he had varied the sentences. Thus, even if Michigan had such a rule, it would not provide assistance to the defendant in this case.

guidelines, however, reference to the guidelines is sufficient justification for the sentence imposed. *People v Broden,* 428 Mich 343; 408 NW2d 789 (1987).

In this case, the sentence imposed was well within the guidelines recommendation of thirty-six to seventy-two months. At the original sentencing on April 4, 1985, the judge referred to the guidelines in explaining his sentence, and thereby satisfied the *Coles* articulation requirement.

More significantly, the defendant argues that his original sentence was invalid because it was harsher than that of his codefendant. Again, we disagree. Sentences must be individualized and tailored to fit the circumstances of the defendant and the case. *People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973). However, there is no requirement that the court consider the sentence given to a coparticipant. *People v Bisogni,* 132 Mich App 244; 347 NW2d 739 (1984).

In any event, these two codefendants were not similarly situated, as the conclusions reached in their respective sentencing information reports indicate. Defendant Jenkins scored a final offense severity level III, with a guidelines sentence range of thirty-six to seventy-two months, while codefendant Cuthbertson scored a final offense severity level II, with a guidelines sentence range of eighteen to twenty-four months. The factor accounting for this difference is Jenkins' score on offense variable 7, offender exploitation of victim's vulnerability. Defendant Jenkins scored three points for this variable on the theory that by hitting the victim while holding a gun to her head the defendant exploited the victim's vulnerability.[9] Codefendant Cuthbertson scored none.

[9] The presentence investigation report states that a struggle ensued and the victim was knocked to the ground. The defendant concurred

Despite the trial court's inability to discern upon review this reason—which this Court finds apparent—for the initial decision to sentence the two defendants differently, the disparity between the two sentences was justified, and did not render Jenkins' original sentence invalid.

The defendant's final two arguments in support of his contention that his original sentence was invalid merit only brief attention. The trial court did not find the defendant guilty of a second, pending armed robbery charge in violation of *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). In any event, the rule stated in *Grimmett* is not violated where the defendant has admitted his guilt of that charge in response to the court's comments. *Id.,* p 608. Nor does the record support the defendant's claim that he received ineffective assistance of counsel at sentencing. There was no actual conflict of interest caused by Jenkins' counsel standing in for codefendant's counsel. If anything, it appears that counsel exerted somewhat more effort on Jenkins' behalf than on Cuthbertson's. As noted above, the disparity in the two sentences was undoubtedly caused not by counsel's inaction but by defendant Jenkins' actions in physically assaulting the complainant.

---

with the investigator's report. See Presentence Report, p 3. Without objection by the defendant, the trial judge could properly rely on the statements in the presentence report. *People v Jacobson,* 72 Mich App 489, 498; 250 NW2d 105 (1976), rev'd on other grounds 400 Mich 859; 282 NW2d 922 (1977).

The defendant now contends that the scoring of these points for offense variable (ov) 7 is improper, because he scored a 0 for ov 2, physical attack or injury. However, the guidelines instruct scoring 0 for this offense when the victim is struck but there is no injury. Mr. Jenkins could score 0 for this variable if he hit the victim but did not injure her. It is therefore not inconsistent that he receive a 0 for ov 2 but a 3 for ov 7 for striking the victim.

CONCLUSION

Because the defendant's original sentence of four and one-half to fifteen years was not invalid, the trial judge could not set it aside and impose a new sentence. The decision of the Court of Appeals is affirmed.

BRICKLEY, RILEY, and GRIFFIN, JJ., concurred with BOYLE, J.

CAVANAGH, C.J. (*dissenting*). In this case there were two codefendants: each had a similar criminal record and each had committed the same crime. Each pleaded guilty and each was sentenced by the same judge. There the correlation ended. One defendant received a sentence of two to ten years and the other defendant, Jenkins, received a sentence of four to fifteen years. Some thirteen weeks later, in a motion for resentencing, counsel for Jenkins brought the discrepancy between the sentences to the court's attention. Jenkins' sentence was reduced to be equivalent to that of his codefendant, Cuthbertson. This sentence correction and parity comports with the principles of sentencing discretion, sentencing review, and proportionality of sentencing. Accordingly, the Court should promulgate a court rule expressly allowing the timely correction of these kinds of sentencing errors by the trial court.[1]

I

The majority concludes that the trial court had

---

[1] While there is an existing court rule which appears to grant this authority, the time limit for the motion for such action expires when the judgment enters, thus foreclosing any meaningful time period for correction. See MCR 6.435(B): "After giving the parties an opportunity to be heard, and provided it *has not yet entered judgment* in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous." (Emphasis added.)

no authority to resentence the defendant because the defendant's original sentence was valid. See *People v Whalen,* 412 Mich 166; 312 NW2d 638 (1981). Because the sentencing judge in this case apparently found error in the sentence imposed, there was no lack of "authority" to vacate the sentence and impose a new and correct sentence. A sentence that is imposed in error can be viewed as invalid, and, even under the majority opinion issued today, invalid sentences can be vacated.

Beginning with *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), and continuing in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), the judicial trend has been toward expanded sentencing review and proportional sentencing. The Court in *Coles* reasoned that the result of unjust sentences is "a feeling of betrayal on the part of the defendant and the public, with confidence in the criminal justice system correspondingly diminished." *Id.* at 542. The Court then gave examples of unjust sentences, including one which is "excessively disparate in relation to similarly situated defendants who have committed similar crimes." *Id.* The trial court apparently determined that Jenkins and Cuthbertson were "similarly situated defendants who had committed similar crimes," and resentenced Jenkins to eliminate the disparity.

The Court of Appeals in this case declared that

[t]he determination of whether a sentence constitutes an abuse of discretion was vested by the Supreme Court in the appellate courts. . . . There is nothing in *Coles* which suggests that the trial courts of this state have any authority to review their sentences absent a direction to do so by this Court or the Supreme Court in a particular case. [164 Mich App 740, 745; 417 NW2d 594 (1987).]

In addition, this Court declared in *Milbourn* that it is the "responsibility of the appellate courts, and the appellate courts only, . . . to review the performance of judicial functions in the trial court." *Id.* at 665. I would not transmogrify this appellate court responsibility into an obstacle which precludes a trial court from timely correcting its own sentencing error. Rather, it is the responsibility of all courts to follow the law. If there is a sentencing error such as that envisioned by *Coles* or *Milbourn,* the trial court should vacate the sentence and correct that error.[2] *Coles* did not preclude a trial court from taking another look at the sentence it imposed. Rather, it merely expanded the scope of potential grounds for invalidating a sentence. Indeed, *Coles* acted to foster the discretion of the trial court by requiring remand for resentencing; the Court of Appeals can merely declare the sentence invalid, it generally has no authority to resentence. It is the trial court that ordinarily must reëxamine the sentence and act to correct it. It would be an exercise in judicial economy to permit error correction at the trial court level, thereby avoiding the need for an appeal and for a remand for resentencing in situations where an admitted judicial error has occurred.

The trial court stated its belief that the disparity in sentences between the two codefendants demonstrated error. The court then granted the motion for resentencing. The act of resentencing in this case reflects the stated policy of the Sentencing Guidelines: "Neither justice nor the appearance of justice is served when similar offenders committing similar offenses receive dissimilar

---

[2] The Court of Appeals has reversed twice under *Coles* where there was an unjustified disparity in sentencing between codefendants. See *People v Pfeiffer,* 177 Mich App 170; 441 NW2d 65 (1989), and *People v Haymer,* 165 Mich App 734; 419 NW2d 63 (1988).

sentences." In addition, no public policy considera-
tion is enhanced by denying the trial court "au-
thority" to resentence in this circumstance.

The majority dismisses the disparity between
the sentences of the two defendants on the ground
that there is a difference in the Sentencing Infor-
mation Reports of the two defendants. The trial
judge, however, said at resentencing that he would
not have enhanced Jenkins' sentence on the basis
of this difference alone. The guidelines in Michi-
gan are advisory rather than mandatory, thereby
vesting discretion in the trial court. The majority
now detracts from that discretion by declaring
that "this Court finds [the reasons for the dispar-
ity] apparent." *Ante,* p 377. Who is better situated
than the trial court itself to determine whether
the sentence was in error, i.e., invalid? While this
Court has cautioned against sentences based
purely on subjective philosophical differences
among judges, the individual judge is still granted
some discretion in sentencing. *This* judge stated
the fact that one victim was female and was
pushed to the ground would not cause *him* to
increase the sentence.[3] Whether it would influence
another judge, with different sentencing philoso-
phies, or whether it would influence this Court to
"find reasons for the disparity," is not the point.
The sentencing judge is in the best position, at
least in the first instance, to determine whether
this particular form of error has occurred.

II

Even though the sentence may have been legally

[3] The court stated, "I looked at both presentence reports. The
sentencing guidelines report doesn't show that he assaulted the
woman and personally that wouldn't be a basis for upping the
sentence. I can't show any rational reason for the difference in the
sentence even with that . . . ."-

"valid," justice requires a vehicle for correcting an admitted sentencing error. This Court, over the years, has moved from a logical rule preventing a trial court from resentencing for the purpose of punishing postsentencing conduct, to the arbitrary rule which prevents a court from correcting its own errors in a timely manner. This contravenes the goals of proportionality in sentencing, sentencing review, judicial economy, and trial court sentencing discretion. The majority relies upon two cases from the previous century, *In re Mason,* 8 Mich 70 (1860), and *People v Meservey,* 76 Mich 223; 42 NW 1133 (1889), as well as three other cases, all decided before *Coles* and the corresponding expansion of sentencing review. *People v Fox,* 312 Mich 577; 20 NW2d 732 (1945), *People v Freleigh,* 334 Mich 306; 54 NW2d 599 (1952), and *People v Dotson,* 417 Mich 940; 331 NW2d 477 (1983) (*Dotson* was decided the same year as *Coles,* albeit approximately six months earlier). In addition to being decided before *Coles* and *Milbourn,* these cases are also distinguishable from the present case. In three of the cases (*Mason, Meservey,* and *Dotson*), the corrected sentence would have increased the defendant's sentence, arguably a violation of double jeopardy. In the remaining two cases, the resentencing occurred *years* after the initial sentencing, arguably intruding upon the Governor's power of commutation.[4] In contrast, the resentencing in this case occurred during the time allowed for appeal and does not intrude on the powers of the executive branch.

Finally, the majority relies on the relatively cryptic order of this Court in *Dotson.* In 1973, Dotson pleaded guilty of second-degree murder and

---

[4] In *Freleigh,* the motion for resentencing was made ten years after the original sentencing and in *Fox,* the motion was made sixteen years after the original sentence.

was sentenced to life imprisonment. In 1980, he moved for resentencing, alleging that the life sentence had been based in part upon a previous felony conviction at which the defendant had not been represented by counsel. After a hearing, the trial court accepted the defendant's contentions and sentenced him to a term of ten to twenty years in prison. Later the same day the trial court asked the parties to reappear so that it could "correct a misstatement." The trial court had intended to sentence the defendant to a term of twenty to forty years and had mistakenly imposed a sentence of ten to twenty years instead. The Court of Appeals affirmed the resentencing, but this Court entered an order of peremptory reversal.

Beginning with *Mason,* where the Court denied a collateral attack on findings of the trial court, and continuing in *Meservey,* where the trial judge attempted to punish postsentencing conduct by imposing a lengthier sentence, the Court in *Dotson* ended with a rule that a simple misstatement, recognized almost immediately, cannot be corrected because the trial court is "without authority to set aside a valid sentence after the defendant had been remanded to jail to await the execution of the sentence." *Dotson, supra* at 940. A more logical rule would be that a sentence is final and not amenable to correction after the appeal time has passed. There is no constitutional or statutory reason not to allow a correction of sentence during the time allowed for posttrial motions. Accordingly, a court rule expressly addressing the correction of sentencing error, limited to the time for appeal, should be adopted.[5]

---

[5] For example, a modified version of F R Crim P 35, to be effective December 1, 1991, expressly allows for the correction of a sentence by the sentencing court. Within seven days after sentencing, the court

LEVIN, J., concurred with CAVANAGH, C.J.

MALLETT, J., took no part in the decision of this case.

---

may correct a sentence imposed "as a result of arithmetical, technical or other clear error."

While this rule is much stricter than the rule I would advocate, the committee note to FR Crim P 35(c) explains that the amendment codifies the result in *United States v Cook,* 890 F2d 672, 675 (CA 4, 1989). In *Cook,* the court "recognize[d] the inherent power in a court to correct an acknowledged and obvious mistake." Although the federal rule restricts the time requirement to a mere seven days, the court in *Cook* advocated the "authority to modify a sentence to correct an acknowledged and obvious mistake exists only during that period of time in which either party may file a notice of appeal." *Id.* at 675.