# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CAROLINE LEE HOCKING-SULLIVAN,

        Defendant-Appellant.

UNPUBLISHED
April 7, 2015

Nos. 315381; 315814
Macomb Circuit Court
LC No. 2012-001590-FC

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

A jury convicted defendant of one count of assault with intent to commit murder, MCL 750.83, and three counts of felonious assault, MCL 750.82. The trial court sentenced defendant to concurrent prison terms of 4 to 20 years for the assault with intent to commit murder conviction and two to four years each for the felonious assault convictions. Defendant appeals by right her convictions in Docket No. 315381, while plaintiff in Docket No. 315814 appeals by right defendant's sentence for assault with intent to commit murder that represented a downward departure from the sentencing guidelines range of 171 to 285 months. We affirm.

Defendant was convicted of assaulting four police officers who went to defendant's home in response to 911 calls of a possible suicide. The police officers testified that they entered the house late at night through an unlocked side door and called out for defendant by name while announcing their presence and identity. The officers discovered defendant lying on a couch, apparently sleeping. As they approached, defendant suddenly got up from the couch with a knife in her hand. The officers ordered defendant to drop the knife, but she raised it above her head and advanced toward Officer Maureen Merpi. Officer Margaret Wemple deployed a Taser and Merpi shot defendant in the chest. Defendant was convicted of assault with intent to commit murder as to Merpi and three counts of felonious assault regarding the other officers present.

## I. DOCKET NO. 315381

### A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to sustain the jury's verdicts. A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). In reviewing the sufficiency of the evidence in a criminal case, this Court must view the evidence in a light most favorable to the prosecution to

determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Circumstantial evidence and reasonable inferences drawn from the evidence may prove the elements of a crime. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of assault with intent to commit murder are (1) an assault (2) with an actual intent to kill (3) which, if successful, would make the killing murder. *Hoffman*, 225 Mich App at 111. An "assault" is defined as "either an attempt to commit a battery or an unlawful act that placed another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). The intent to kill may be inferred from any facts in evidence, *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), and minimal circumstantial evidence is sufficient, *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). The use of a lethal weapon will support an inference of intent to kill. *People v Turner*, 62 Mich App 467, 470; 233 NW2d 617 (1975). It is not necessary that the defendant actually inflict injury. *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996).

"Felonious assault is defined as a simple assault aggravated by the use of a weapon." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993). "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). An "assault" is defined as "either an attempt to commit a battery or an unlawful act that placed another in reasonable apprehension of receiving an immediate battery." *Starks*, 473 Mich at 234.

The evidence, viewed in a light most favorable to the prosecution, showed that the police entered defendant's home to conduct a welfare check. They announced their presence several times. Officer Wemple entered the living room; the other officers were clustered close by at the entryway. The officers were all in uniform and the ambient light from the kitchen was sufficient to make them readily visible. Defendant sat up on the couch holding a large knife. She ignored commands to drop the knife and jumped up with the knife raised in a threatening manner. Such conduct is sufficient to establish an attempted-battery assault on Officer Wemple, i.e., an assault sufficiently proximate to the intended victim as to evince an actual ability to inflict injury on the victim. *People v Reeves*, 458 Mich 236, 244; 580 NW2d 433 (1998). Further, Officer Wemple testified that she feared for her life as soon as defendant jumped off the couch with the knife raised. Given that defendant was faced with uniformed police officers and ignored their commands to drop the knife, Officer Wemple's apprehension of an immediate battery was reasonable. Therefore, the evidence was also sufficient to establish an apprehension-type assault. *Id*.

Once off the couch, defendant advanced quickly toward the officers clustered in the entryway. Defendant advanced with the knife still raised in a threatening manner, again ignoring that the persons in the entryway were uniformed police officers issuing orders to drop the knife. This evidence was sufficient to establish an assault against the other officers. Further, the fact that defendant charged directly at Officer Merpi while armed with a knife raised in a threatening manner and continued to advance on her despite her orders to stop or drop the knife was sufficient to support an inference that defendant acted with the intent to kill.

-2-

Finally, the prosecution presented sufficient evidence to permit the jury to reject defendant's claim that she acted in lawful self-defense. A defendant may use force to protect herself from an assault by another. *Detroit v Smith*, 235 Mich App 235, 238; 597 NW2d 247 (1999). A finding that the defendant acted in self-defense requires a finding that the defendant acted intentionally and that the circumstances justified her actions. *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990). A successful self-defense claim requires a defendant to have had an honest and reasonable belief that she was in danger and used only that amount of force necessary to defend herself. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010); *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). Lawful self-defense has three elements: (1) the defendant honestly and reasonably believed that she was in danger; (2) the danger she feared was serious bodily harm, a sexual assault, or death, and (3) the defendant honestly and reasonably believed the actions taken were necessary to prevent the feared harm. *Heflin*, 434 Mich at 502, 508-509; *Guajardo*, 300 Mich App at 35-36; MCL 780.972(1).

The evidence at trial suggested that defendant acted as she did because she believed that someone had broken into her house, possibly to sexually assault her. Defendant formed that belief because a man had sexually assaulted her inside her home in 1986, and she heard a man's voice use a phrase similar to that the assailant used during the prior assault. But defendant testified that she did not know if she actually heard the voice or if she were simply dreaming that she heard it. Further, defendant was equivocal about the danger she faced. On the one hand, she stated that she felt someone was in the house, but she did not know who it was. The uncontroverted evidence showed that the only people immediately surrounding her were uniformed police officers who, although armed with guns, had announced their identity and were telling defendant to drop the knife. Defendant also testified that she did not know if anyone was in the house, and she did not actually see anyone there. If defendant was not aware of any intruders, she could not have reasonably believed that she was in danger, much less danger sufficiently serious to warrant the use of deadly force. Finally, defendant specifically denied using any force against the officers. She testified that that she did not assault anyone or attack anyone with a knife. She explained that she did not know anyone was in the house and had no reason to "go after somebody if they're not there." The jury could reasonably find from this evidence that defendant did not act in lawful self-defense.

## B. DEFENDANT'S STATEMENT

Defendant next raises interrelated claims regarding the playing of portions of a statement she made to the police the morning after the incident. The prosecution used the statement to impeach defendant's trial testimony. Defendant asserts this was trial error and that her counsel was ineffective for not having moved to suppress the statement before trial. Defendant gave the statement to a detective while in the hospital several hours after she had been shot. The prosecution did not offer the statement against defendant in its case-in-chief, but it did use portions of it to impeach defendant's testimony during cross-examination. The trial court, however, subsequently instructed the jury to disregard defendant's statements and not consider them in any way in arriving at a verdict. Although defense counsel had repeatedly objected to the admission of defendant's statement during and after trial, he did not seek a pretrial ruling regarding its admissibility by way of a motion to suppress. Following a post-trial evidentiary hearing, the trial court ruled that defendant's statement was admissible and that counsel was not ineffective for failing to move to suppress it before trial or in pursuing the defenses raised at trial.

## 1. ADMISSIBILITY OF DEFENDANT'S STATEMENT

In reviewing a trial court's determination on a motion to suppress a statement, this Court reviews the record de novo but will defer to the trial court's factual findings unless they are clearly erroneous. *People v Harris*, 261 Mich App 44, 53; 680 NW2d 17 (2004). A finding of fact is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

"Both the state and federal constitutions guarantee that no person shall be compelled to be a witness against himself or herself." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). "A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant voluntarily, knowingly, and intelligently waived [her] Fifth Amendment rights." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003), citing *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "[W]hether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000). A waiver is voluntary when it is the product of a free and deliberate choice rather than induced by intimidation, coercion or deception. *People v Gipson*, 287 Mich App 261, 264-265; 787 NW2d 126 (2010). A defendant's mental condition or other deficiency that renders her susceptible to coercion does not render the waiver involuntary absent evidence that the police exploited the deficiency. *People v Cheatham*, 453 Mich 1, 15-17; 551 NW2d 355 (1996) (BOYLE, J.); *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Whether a waiver is knowing and intelligent "requires an inquiry into the suspect's level of understanding, irrespective of police behavior." *Daoud*, 462 Mich at 636.

> "To waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail. The mental state that is necessary to validly waive *Miranda* rights involves being cognizant at all times of the State's intention to use one's statements to secure a conviction and of the fact that one can stand mute and request a lawyer." [*Id.* at 640-641, quoting *In re WC*, 167 Ill 2d 307, 328; 657 NE2d 908 (1995).]

If a defendant voluntarily, knowingly, and intelligently waives her rights and makes a statement, the statement itself must be voluntary to be admissible. *Daoud*, 462 Mich at 630-632; *Cheatham*, 453 Mich at 13. A statement is voluntary if the totality of the surrounding circumstances shows that it is the product of an essentially free and unconstrained choice and not the result of an overborne will. *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). Relevant factors in determining voluntariness include the defendant's age, the defendant's education or intelligence level, the extent of the defendant's previous experience with the police, whether the defendant was subjected to repeated and prolonged questioning, whether the defendant was advised of her constitutional rights, whether there was an unnecessary delay in bringing the defendant before a magistrate before she made her statement, whether the defendant was injured, intoxicated or drugged, or in ill health when she made the statement, whether the defendant was deprived of food, sleep or medical attention, and whether the defendant was physically abused or threatened with abuse. *Id.* at 334. Under the totality the totality of the circumstances, no single factor is determinative on the issue of voluntariness. *Id.*; *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005).

The evidence supports the trial court's determination that defendant voluntarily, knowingly, and intelligently waived her *Miranda* rights. Despite whatever the amount of drugs and alcohol in defendant's system, the trial court found that defendant provided sound, articulate, sometimes detailed answers to questions. That finding is not clearly erroneous in light of defendant's statements during the recorded interview. Detective Shippy advised defendant of her rights, and she repeatedly said that she understood them. She was able to articulate her right to remain silent. Detective Shippy spoke to defendant in a conversational tone and asked if, knowing her rights, defendant would answer his questions. Defendant chose to proceed with the interview and never asked to stop or otherwise indicated an inability to continue, whether because of pain, tiredness, lack of clear thinking, or anything else. There is nothing in the record to indicate that Detective Shippy intimidated defendant or deceived her about why he was there or otherwise coerced her to waive her rights against her will.

For many of these same reasons, the evidence supports the trial court's determination that defendant's statement itself was also voluntary. Defendant testified at trial that she was 49 years old. Her education level was not disclosed, but it is apparent from the manner in which she testified at trial that she is of at least average intelligence. Defendant had one prior criminal charge for which she was on bond at the time of the instant offenses. Defendant was questioned only one time for a period of 45 minutes. Defendant was advised of her rights and said that she understood them. Defendant was suffering from a noncritical gunshot wound at the time and was sleep-deprived, but that was due to her treatment at the hospital and not to any police misconduct. Defendant had consumed drugs and alcohol and was legally intoxicated at the time she entered the hospital. But her recorded interview conducted several hours later reveals a rational and coherent person who was able to carry on a meaningful conversation. Consequently, the trial court did not err in finding that defendant validly waived her *Miranda* rights and that the statement she gave was product of her free and unconstrained choice.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. The trial court's factual findings are reviewed for clear error, but this Court determines de novo whether the facts properly found by the trial court establish ineffective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Effective assistance of counsel is presumed and the defendant bears a heavy burden of proving otherwise. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish ineffective assistance of counsel, a defendant must show "(1) that "counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id.* at 51. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant argues that trial counsel was ineffective because he did not file a motion to suppress defendant's statement before trial. The decision whether to file a pretrial motion is a matter of trial strategy. *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The trial strategy, however, must be sound, and "a

court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Therefore, counsel may be found ineffective with regard to a strategic decision if the strategy employed was not a sound or reasonable one. *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014).

Although it would have been better for defense counsel to have obtained a pretrial ruling regarding the admissibility of defendant's statement rather than proceed on the assumption that the prosecutor would not attempt to use it at trial, the trial court did not err in finding that the statement was admissible. Thus, it appears a pretrial motion to suppress the statement would not have succeeded, and counsel is not required to bring futile motions. *Fike*, 228 Mich App at 182.

Defendant also claims, however, that defense counsel was ineffective for choosing a trial strategy without knowing whether the statement would be admitted, thus presenting two defenses, one of which (challenging the officers' version of events based on the officers' handling of the incident and the subsequent investigation) may have alienated the jury, instead of proceeding with one simple and straight-forward defense (i.e., that defendant's actions were justified because she acted in self-defense).

The failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Defense counsel can be ineffective by settling on a defense strategy without conducting any investigation of the case. *Trakhtenberg*, 493 Mich at 43, 52. The United States Supreme Court has stated:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. [*Strickland*, 466 US at 690-691.]

The record in this case makes clear that defense counsel formulated his defense strategy without knowing whether defendant's statement would be admissible at trial. But counsel's ignorance regarding the admissibility of defendant's statement does not undermine confidence in the outcome of the case. *Id*. at 694. Counsel properly may argue multiple defenses at a trial. *People v Cross*, 187 Mich App 204, 205-206; 466 NW2d 368 (1991). In this case, defense counsel presented two lines of defense. One was that the officers' testimony regarding what transpired was not credible in light of their violation of certain procedures and defects in the investigation of the case. While putting the police on trial may not always be a successful defense strategy, it can sometimes work. Such a defense has nothing to do with the evidence against the defendant and does not require the defendant to testify. So, whether defendant's statement was admissible would not have a bearing on the decision whether to proceed with the strategy.

Defendant also asserted her actions constituted self-defense. In her police statement and at trial, defendant claimed not to remember much of what happened; consequently, she could not affirmatively state that she attacked the officers because she thought they were intruders who meant to harm her. The evidence regarding defendant's prior sexual assault, her resulting mental health problems, and her depression and intoxication at the time of the offenses created a possibility that defendant acted in self-defense, even if defendant could not say that was what happened. Because defendant better than anyone else could explain her perceptions that night and how they were influenced by her past, we agree it was reasonable for counsel to call defendant to testify about these matters. While having defendant testify rendered her vulnerable to impeachment with a prior inconsistent statement, there is nothing in the record to suggest that defense counsel had reason to believe that defendant would actually testify in a manner contrary to her prior statement. Therefore, it was not unreasonable strategy for counsel to present a claim of self-defense and have defendant testify without knowing for certain whether defendant could be impeached with her prior statement.

## C. ADMISSION OF EVIDENCE

Defendant lastly argues that the trial court erred by excluding expert testimony in support of her claim of self-defense, which defendant argues violated her constitutional right to present a defense. Defendant sought to call Dr. Larry Friedberg to offer testimony about "rape trauma syndrome" or post-traumatic stress disorder (PTSD).

We review a trial court's decision to exclude evidence for an abuse of discretion. *Douglas*, 496 Mich at 565. An abuse of discretion occurs when the court selects an outcome that is outside the range of reasonable and principled outcomes. *Id.* Whether the exclusion of evidence violates a defendant's right to present a defense is a constitutional question that is reviewed de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

It is axiomatic that a person accused of a crime has a state and federal constitutional right to present a defense. *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). This includes the right to call witnesses to establish a defense. *Id.* at 278-279. But the right of an accused to present evidence in his or her defense is not absolute. *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008). "It is well settled that the right to assert a defense may permissibly be limited by 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Toma*, 462 Mich 281, 294; 613 NW2d 694 (2000), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Thus, the rules of evidence do not abridge the right of an accused to present a defense as long as they are not arbitrary or disproportionate to the purposes that they are designed to serve. *Unger*, 278 Mich App at 250 (citations omitted).

To be admissible, evidence must be relevant. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The testimony of an expert witness is admissible if the court finds that specialized knowledge will assist the jury to understand the evidence or to determine a fact in issue, that the witness is qualified as an expert, and "is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich

106, 121-122; 821 NW2d 14 (2012); MRE 702. This Court has opined that "[a] defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger," *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011), remanded on other grounds 493 Mich 916 (2012), but has not explained the circumstances under which such testimony would be admissible.

In this case, defendant never disclosed exactly what testimony Dr. Friedberg would have offered if called. Nonetheless, it is apparent from defendant's own testimony at trial that Dr. Friedberg's testimony would not have been admissible because defendant did not actually present a claim of self-defense. As noted earlier, defendant never admitted that she assaulted the officers with the knife. Instead, defendant testified that she got up to "see if somebody was there in case I needed to do something" like defend herself or escape but she never admitted to actually having seen anyone. A defendant cannot establish self-defense when she denies committing the crime. See *Heflin*, 434 Mich at 504 n 17. Because the right to present a defense may be limited by the rules of evidence regarding admissibility, *People v Danto*, 294 Mich App 596, 604; 822 NW2d 600 (2011), and the evidence did not meet the standard for relevancy, MRE 402, defendant's right to present a defense was not violated.

## II. DOCKET NO. 315814

Plaintiff challenges the trial court's decision to depart downward from the sentencing guidelines range of 171 to 285 months with respect to defendant's conviction for assault with intent to commit murder and impose a sentence of 4 to 20 years' imprisonment for that offense.

The trial court is generally required to impose a minimum sentence within the sentencing guidelines range. MCL 769.34(2); *People v Buehler*, 477 Mich 18, 24; 727 NW2d 127 (2007). But a trial court may depart from the guidelines recommended range "if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." MCL 769.34(3); *Buehler*, 477 Mich at 24. Only objective factors that are capable of verification may be used to assess whether there are substantial and compelling reasons to deviate from the minimum sentence range under the guidelines. *People v Smith*, 482 Mich 292, 299; 754 NW2d 284 (2008). Objective and verifiable factors "must be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention." *Id.*; see also *People v Babcock*, 469 Mich 247, 257-258; 666 NW2d 231 (2003). Objective and verifiable factors are "actions or occurrences that are external to the minds of the judge, defendant, and others involved in making the decision, and must be capable of being confirmed." *People v Abramski*, 257 Mich App 71, 74; 665 NW2d 501 (2003).

In reviewing a departure from the sentencing guidelines range, the existence of a reason for departure is a factual determination that is reviewed for clear error. *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court's determination that a reason for departure is objective and verifiable is a question of law that is reviewed de novo on appeal. *Babcock*, 469 Mich at 264. Whether the reasons cited by the trial court "are substantial and compelling enough to justify the departure is reviewed for an abuse of

discretion, as is the amount of the departure. A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Smith*, 482 Mich at 300.

A departure from the guidelines should occur only in exceptional cases. *Id*. at 302; *Babcock*, 469 Mich at 257. "In determining whether a sufficient basis exists to justify a departure, the principle of proportionality . . . defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed." *Babcock*, 469 Mich at 262. "[T]he trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *Smith*, 482 Mich at 304. A departure is appropriate "if there are substantial and compelling reasons that lead the trial court to believe that a sentence within the guidelines ranges is not proportionate to the seriousness of the defendant's conduct and to the seriousness of [her] criminal history," such that a departure would result in "a more proportionate criminal sentence than is available within the guidelines range." *Babcock*, 469 Mich at 264. The "principle of proportionality . . . is a function of the seriousness of the crime and of the defendant's criminal history." *Id*. In general, the principle of proportionality provides that the more egregious the offense and the more extensive is the defendant's criminal history, the greater the punishment. *Id*. at 263. The trial court must also offer some explanation for the extent of the departure "independent of the reasons given to impose a departure sentence." *Smith*, 482 Mich at 305-306.

In this case, the trial court departed below the sentencing guidelines range of 171 to 285 months for the assault with intent to commit murder conviction and imposed a prison sentence of 4 to 20 years. The trial court determined that the sentencing guidelines recommendation was totally disproportionate to the actual crime and the events and circumstances that occurred. The court noted that defendant was the only person physically injured after being shot in her own home in the middle of the night.[1] The trial court determined that the punishment recommended by the guidelines was not proportionate to the crime and that a departure downward was warranted because the instant case was exceptional. *Babcock*, 469 Mich at 257-258, 264

First, we examine the substantial and compelling reasons for its departure the trial court stated on the record. Before doing so, we observe that the trial court made plain that it would have imposed a departure to the same extent even if only one of the substantial and compelling reasons it found were later determined to be valid. See *Babcock*, 469 Mich at 260-261, n 15. It is also clear that the trial court found the facts and circumstances of this case so unusual and exceptional that they justified the extent of the departure that the trial court imposed. We agree and conclude, therefore, that if the trial court properly stated on the record substantial and compelling reason[s] for the departure, MCL 769.34(3), it also explained the extent of the departure "independent of the reasons given to impose a departure sentence." *Smith*, 482 Mich at 305-306.

---

[1] We acknowledge that the police were legally permitted to enter defendant's house without her permission or a warrant under the emergency-aid exception. *Tierney*, 266 Mich App at 704. Furthermore, defendant was shot because she charged at the officers with a knife in hand.

The first substantial and compelling reason the trial court noted for its departure downward from the guidelines was defendant's long-standing severe mental and emotional suffering that arose from her being the victim of a violent rape in her own home in the past. The police investigation in this case confirmed the prior rape that defendant suffered in her own home, and the presentence investigation report indicates that defendant has been diagnosed with major depression, PTSD, and dissociative disorder. Defendant had attempted suicide in the past, and the record in this case shows that the very reason justifying the police entry into defendant's home on the night of the occurrence was information that defendant might be suicidal.[2] The trial court did not clearly err with respect to its factual finding of defendant's past victimization or regarding defendant's resulting mental health issues. We also find that there is sufficient evidence documenting defendant's mental health issues to render them objective and verifiable. *Smith*, 482 Mich at 299; *Abramski*, 257 Mich App at 74.

The second[3] substantial and compelling reason the trial court discussed was that the offenses occurred in defendant's own home after the police entered it and found her sleeping on a couch; defendant was also under the influence of alcohol and prescription medications when the police startled her awake. The trial court did not clearly err regarding these facts, which also are objective and verifiable. Tests conducted at the hospital where defendant was taken for treatment of a gunshot wound confirmed that defendant was highly intoxicated. Specifically, defendant had blood alcohol level of 0.21 and she tested positive for benzodiazepines.

A third substantial and compelling reason the trial court noted for its departure downward from the guidelines was that only defendant was physically injured in the incident. This finding is also not clearly erroneous and is, again, objective and verifiable. While standing alone, the fact that the perpetrator of an offense is the only one injured as a result of the offense may not usually keenly or irresistibly grab the court's attention to warrant a downward departure, *Smith*, 482 Mich at 299, it may when combined with other objective and verifiable, substantial and compelling reasons, justify the court's exercise of discretion to depart. *Id*. at 300. Such was the case here under these exceptional circumstances.

Next, the trial court discussed that defendant had no prior felony record, had strong support from family and friends, and continued to suffer mental health issues as a result of her being the victim of a violent crime. These findings are supported by the record and not clearly erroneous; they may be substantial and compelling reasons for departure when considered in conjunction with other facts and circumstances. See *People v Portellos*, 298 Mich App 431, 455; 827 NW2d 725 (2012) (opining that a while "defendant's lack of criminal record alone is not a substantial and compelling factor, it may become a substantial and compelling factor when considered in conjunction with the defendant's age and other history."). Similarly, although the

---

[2] As noted previously, under the emergency-aid exception to the warrant requirement the police may enter a dwelling without a warrant when they reasonably believe, based on specific, articulable facts, that a person inside is in need of immediate aid. *Tierney*, 266 Mich App at 704.

[3] The trial court did not state its reasons for departure as a numbered list, and we combine some of the court's comments because of their similarity and for ease of discussion.

factors of no felony record, strong support of family and friends, and continuing mental health issues as the result of being a crime victim may not be substantial and compelling when considered independently, they are when considered together and in light of the other facts and circumstances of this case.

In sum, we conclude that the trial court did not clearly err by finding several objective and verifiable factors that were of considerable worth in determining the length of the sentence and that, when considered together, keenly and irresistibly grabbed the trial court's attention. *Smith*, 482 Mich at 299; *Babcock*, 469 Mich at 257-258. The trial court also did not err in concluding that the instant case was exceptional and warranted a departure from the guidelines. *Smith*, 482 Mich at 302; *Babcock*, 469 Mich at 257. Further, the trial court articulated the basis for the extent of the departure "independent of the reasons given to impose a departure sentence." *Smith*, 482 Mich at 305-306. Ultimately, the trial court concluded that the sentence it fashioned was more proportionate than that recommended by the guidelines range. *Babcock*, 469 Mich at 264. The trial court provided principled reasons for its departure, and we cannot conclude that the trial court's determination was outside the range of principled outcomes. *Smith*, 482 Mich at 300.

We affirm.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly